# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 14, 2001 Session

## STATE OF TENNESSEE v. MICHAEL T. MEGHREBLIAN

**Appeal from the Circuit Court for Williamson County**
**No. I-998-315     Donald P. Harris, Judge**

---

**No. M2000-02444-CCA-R3-CD - Filed November 16, 2001**

---

The defendant, Michael T. Meghreblian, is serving a seven and one-half year sentence in the Department of Correction as a result of his Williamson County Circuit Court conviction of aggravated assault.  On appeal, he complains that the trial court erred (1) in determining the length of his Range II sentence and (2) in denying any form of alternative sentence.   Because the record supports the trial court's determinations, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

J. Robin McKinney, Jr., Nashville, Tennessee, for the Appellant, Michael T. Meghreblian.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Edward Gibson, District Attorney General; Derek K. Smith, Assistant District Attorney General; and Elizabeth K. Ryan, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A Williamson County grand jury indicted the defendant for aggravated child abuse, and the defendant entered a negotiated plea of guilty to aggravated assault.  He agreed to be classified as a Range II offender even though his lack of a prior criminal record would have qualified him for Range I treatment.  The plea was otherwise "open," and the parties deferred to the trial court to determine the length and the manner of service of the sentence.  After a sentencing hearing, the trial court imposed a sentence of seven and one-half years to be served in confinement.

We glean our knowledge of the circumstances of the conviction offense from the testimony of witnesses during the sentencing hearing.  The state's evidence showed that, on a day in June, 1998, the defendant was keeping his six-year-old nephew, Austin, the victim in this case.

Also present in the defendant's home was his young son. In the afternoon, Austin's mother picked up Austin, who complained to her that he had stomach pains. Within a short time, Austin began having vomiting spells that persisted for a couple of days and culminated in his mother taking him to the hospital. Ultimately, he was diagnosed as having a "baseball-sized" hematoma in the intestinal area. Because the injury was the result of a blunt-force trauma, the attending medical staff notified law enforcement officials of possible child abuse. Upon being questioned, Austin stated that the defendant became upset because Austin "wasn't minding" and that the defendant punched him.

The defendant's ex-wife testified that when she asked the defendant if he had assaulted Austin, he was evasive and would neither admit nor deny the assault. Although the defendant had held the same job for fourteen years, he lost his job in 1998 due to his use of cocaine and his refusal to submit to his employer's drug test. During their marriage, the defendant sold some of his wife's jewelry to raise cash for buying cocaine. At the time of the sentencing hearing, the defendant was not employed and was approximately $5,000 in arrears in child support payments.

The defendant testified at the sentencing hearing that he became "stressed out" after working for several years in the plumbing supply business and began drinking alcohol and taking drugs. He maintained, however, that he was not under the influence of alcohol or drugs on the afternoon that Austin was injured.

On that afternoon, he placed Austin and his son in a bedroom to watch television while he took a shower. When he returned to the room, he discovered that the boys were wearing "capes" and playing "Power Rangers." As he entered the room, his son jumped from the bed onto Austin, who was lying on his back in the floor. The defendant surmised that this impact caused Austin's injuries and denied that he had assaulted Austin in any way. When asked why he had not previously given this account of the injury, the defendant said he was scared.

The defendant testified that he was arrested for the aggravated child abuse charge in late 1998. After the arrest, he enrolled in a structured, residential, rehabilitation program called Hope House, but Hope House ejected him from the program when, during a holiday pass, the defendant consumed alcoholic beverages. The defendant then spent several weeks as a cook with the Salvation Army. Afterward he rejoined Hope House, where he resided at the time of the sentencing hearing. Since his arrest in this case, the defendant has not been gainfully employed, except for a brief period of time. He explained that the program at Hope House is very structured and does not permit the residents to work. He admitted that he is delinquent in paying child support but vowed that, when his Hope House program ended, he would undertake two jobs as a means of paying his arrearage.

Although the defendant had received no convictions prior to his June, 1998 assault of Austin Brown, he thereafter acquired within a short period of time two convictions for driving under the influence (DUI). Also, the presentence report showed that, in the second DUI case, the defendant's first DUI probation had been revoked. The defendant's counsel questioned the accuracy of the revocation report but offered no proof to counter it.

When a defendant appeals a sentence, the reviewing court conducts a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Fields*, 40 S.W.3d 435, 439 (Tenn. 2001); *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Fields*, 40 S.W.3d at 439. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Ashby*, 823 S.W.2d at 169. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, even if our independent judgment on the question might differ. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

An appropriate determination of the specific sentence and the propriety of sentencing alternatives is reached by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b); 40-35-103(5) (1997); *see Fields*, 40 S.W.3d at 439.

The record in this case reflects that the trial court properly considered and followed the sentencing principles. Accordingly, the trial court's determination is entitled to the presumption of correctness.

Aggravated assault as committed by the defendant is a Class C felony, Tenn. Code Ann. § 39-13-102 (Supp. 2000), for which the minimum Range II sentence is six years and the maximum is ten years. *Id*. § 40-35-112(b) (1997). The trial court applied sentencing enhancement factors (1), that the defendant had a previous history of criminal behavior, and (4), that the victim was particularly vulnerable because of age, *see* Tenn. Code Ann. § 40-35-114(1), (4) (Supp. 2000), to fix the sentence at seven and one-half years. It denied probation or any other form of alternative sentencing because it determined that the defendant is a poor candidate for rehabilitation. The trial court based this determination upon its findings that the defendant's account of Austin's injury was unbelievable and, in fact, untrue, and upon the defendant's failure to responsibly provide for the needs of his family.

First, we examine the length of the sentence. Although the defendant does not *per se* challenge the use of enhancement factors (1) and (4), we note that, at seven and one-half years, the sentence fell in the lower half of the six-to-ten-year range. We hold that this sentence is supported by properly applied enhancement factors (1) and (4), and these factors were entitled to moderate to significant weight. The trial court based its finding of a "previous history of . . .

criminal behavior" upon the defendant's use of cocaine. *See* Tenn. Code Ann. § 40-35-114(1) (Supp. 2000). Not only is the application of factor (1) supported by this finding, but the application of this factor is also supported by his two DUI convictions. *See State v. Chad Douglas Poole*, No. 02C01-9506-CC-00178, slip op. at 5-6 (Tenn. Crim. App., Jackson, Jan. 31, 1996) (in determining applicability of enhancement factor (1), sentencing court may consider criminal convictions or behavior which occurred "prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration"), *aff'd on other grounds*, 945 S.W.2d 93 (Tenn. 1997). Thus, factor (1) was properly applied.

We also hold that factor (4), that the victim was particularly vulnerable, was properly applied. Even though proof of age alone may be insufficient to establish particular vulnerability for purposes of factor (4), *see State v. Lewis*, 44 S.W.3d 501, 504-05 (Tenn. 2001), the proof in the present case showed that the victim was not a robust six-year-old; he was solely under the defendant's physical control during the day of the assault; he had no ability to summon help while in the defendant's home; and he was unwilling or, due to his injuries, unable to explain the nature of the assault for several days. *See id.* at 505 (in determining applicability of factor (4), court should look at whether victim was unable to resist the crime, summon help, or testify at a later date). The totality of the circumstances support the application of factor (4).

The defendant urges us to hold that the sentence should have been mitigated because he made substantial efforts to overcome his drug addiction. *See* Tenn. Code Ann. § 40-35-113(13) (1997). During his testimony at the sentencing hearing, however, the defendant stated that he was not under the influence of an intoxicant or drugs at the time of the assault and that his drug addiction played no active role in the commission of the offense. Under these circumstances, we believe that any mitigation effect of his subsequent drug rehabilitation would have been slight and would be insufficient, compared to the more weighty enhancement factors, to influence any change in the sentence. We stress that the sentence, as imposed, falls within the lower half of the applicable range. We find no error in the imposition of this sentence.

Next, we examine the trial court's decision to impose incarceration rather than granting some form of alternative sentence.

As a Range II offender, the defendant is not presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (1997). "As such, the state had no burden of justifying confinement through demonstrating the presence of any of the considerations upon which confinement may be based." *State v. Joshua L. Webster*, No. E1999-02203-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Dec. 4, 2000).

Moreover, having been convicted of aggravated assault, he is ineligible for placement in a community corrections program.[1] *See* Tenn. Code Ann. § 40-36-106(a)(2) (Supp. 2000). Thus, any alternative to confinement that could have been considered would have necessarily included probation, *see* Tenn. Code Ann. § 40-35-104(c) (1997), and the defendant bore the burden of establishing that he was entitled to any probation. *Joshua L. Webster*, slip op. at 3-4. This initial burden, combined with the post-judgment presumption of correctness of the trial court's sentence, equates to a daunting burden on the defendant to show on appeal that he should have been awarded some measure of probation.

As noted earlier, the potential for rehabilitation or treatment is one of the factors that forms the basis for granting sentencing alternatives, particularly probation. *See* Tenn. Code Ann. § 40-35-103(5) (1997); *State v. Anderson*, 985 S.W.2d 9, 21 (Tenn. Crim. App. 1997). Lack of candor and credibility are reliable indications of a defendant's potential for rehabilitation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *State v. Dowdy*, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994). A defendant's lack of candor to the sentencing court reflects poorly on the defendant's rehabilitative potential and thus is a basis to deny probation. *State v. Leggs*, 955 S.W.2d 845, 851-52 (Tenn. Crim. App. 1997); *State v. Gennoe*, 851 S.W.2d 833, 837 (Tenn. Crim. App. 1992).

In the present case, the trial court specifically found that the defendant was not candid and truthful and that, therefore, he was a poor candidate for the rehabilitation that alternative sentencing is designed to engender. The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). We must defer to the trial court's determination of demeanor and credibility issues. We hold that these findings support the trial court's denial of alternative sentencing.

For the reasons explained above, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1]The defendant makes no claim that he is a candidate for "special needs" community corrections placement despite his ineligibility. *See* Tenn. Code Ann. § 40-36-106(c). Moreover, the record contains insufficient evidence of a treatable substance abuse condition to support "special needs" placement.