IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2002 Session

## STATE OF TENNESSEE v. JAMES L. PARTIN

**Direct Appeal from the Criminal Court for Claiborne County**
**No. 11508     E. Shayne Sexton, Judge**

**No. E2001-02254-CCA-R3-CD**
**September 5, 2002**

Defendant, James L. Partin, was indicted for the offenses of second degree murder, aggravated assault, three counts of felony reckless endangerment, and unlawful possession of a weapon with intent to use it in the commission of felony reckless endangerment. Pursuant to a negotiated plea agreement, Defendant pled guilty to voluntary manslaughter, a lesser-included offense of second degree murder, and all other charges were dismissed. The plea agreement further provided that the trial court would determine the length and manner of service of Defendant's sentence, with the sole parameter being that he be sentenced as a standard Range I offender. Following a sentencing hearing, the trial court ordered that Defendant serve five years in confinement in the Department of Correction. In this appeal, Defendant contends that the trial court erred in determining the length and manner of service of his sentence. After a thorough review of the sentencing proceeding, we affirm the judgment of the trial court concerning the length of Defendant's sentence. We reverse the trial court's judgment regarding manner of service, however, and order that Defendant serve his sentence on split-confinement.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed in Part and Reversed in Part.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee for the appellant, James L. Partin.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William Paul Phillips, District Attorney General; Jared Effler, Assistant District Attorney General; and Todd Longmire, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The evidence in the record concerning the circumstances leading to the voluntary manslaughter conviction in this case consists of the prosecutor's statement at the guilty plea hearing and the Defendant's version of the incident as contained in the presentence report.

To sustain a factual basis for the guilty plea in accordance with Tennessee Rules of Criminal Procedure 11(f), the following statement was made at the guilty plea hearing:

> [PROSECUTOR]: May it please the Court, the parties stipulate that on or about January the 29th of the year 2000 James L. Partin in Claiborne County, Tennessee, did unlawfully, feloniously and knowingly kill Lloyd Michael upon a sudden heat in hot blood and with provocation, against the peace and dignity of the State of Tennessee.

The Defendant's version of the events which lead to his commission of the crime are contained in the presentence report as follows:

> I was at AC's Bar until it closed and had drank 5-6 beers and 2 shots of liquor. When the bar closed, several of us moved the party over to the mobile home next to the bar which was the home of Jackie Evans, the woman who was bartender at AC's. I was drinking at Jackie's home and many were smoking marijuana as well as drinking. They were playing cards in the kitchen and I was in the living room. They were pranking Jackie Evans and she asked them to leave. Lloyd Michael [the victim] was sitting at the kitchen table and said something smart to me but Randal Webb escorted me outside and we talked and drank for maybe an hour. I was ready to go but I realized I had left a coat inside the trailer and I followed Randal in to the get the coat. When I came inside Lloyd Michael saw me and began to cuss me again. He was still sitting at the kitchen table. He came out of his chair with a gun in his hand he stumbled as he rose and I yelled 'he has a gun" as he stumbled I was able to get my gun out of my pocket. It was a .357 magnum revolver loaded with 6 rounds. I fired several times in a wild pattern. I was scared that the others would shoot back at me. So I dropped the gun on the floor of the trailer grabbed my coat and left.

Defendant did not testify at the sentencing hearing. The following additional information has been gleaned from other portions of the presentence report and the testimony of various witnesses at the sentencing hearing. Defendant was forty-three years old at the time of the offense, and his prior record contains one criminal conviction: a DUI offense in November 1990. Defendant married his current ex-wife, Carolyn, in 1975. They divorced in 1999 after twenty-three years of marriage, but resumed cohabiting about a week later. They were still living together at the time of

the sentencing hearing. Defendant and Carolyn have four grown children and four grandchildren. (Their youngest child is twenty-one years old.)

When Defendant was in tenth grade, he dropped out of high school to work in the coal mines in Kentucky. For a period of about twenty-five years, he worked in strip mines as a heavy equipment operator. Defendant claims that he has suffered from depression and nervous disorders since he was a teenager and that his job has caused him to develop arthritis. Approximately two and one-half years prior to his commission of the crime, his mental health deteriorated to the point he was unable to work. Thereafter, Defendant's depression problems were aggravated by the deaths of his cousin's son and a nephew in 1997, followed by his son's involvement in an automobile wreck wherein he sustained serious injuries. Defendant has applied for Social Security disability income. Carolyn testified that Defendant was also taking medication for his depression and was participating in professional counseling.

Defendant told the probation board officer that he began to use alcohol when he was eighteen or nineteen years old. In 1990, he quit drinking. He remained sober until 1999, at which point he commenced drinking and going to bars on the weekends (approximately twelve beers each weekend). He claimed that he quit visiting bars after he killed the victim in this case. Yet, at the time of the presentence interview, he said that he was consuming "3 - 4 beers every other day or so."

At the sentencing hearing, the victim's widow, sister, and brother gave testimony concerning the impact the victim's death had upon themselves and the victim's minor children. It is clear from the record that the victim was a positive influence upon his family and that his untimely death had a devastating effect on the lives of several people.

## ANALYSIS

Defendant contends that the trial court erred in determining both the length and the manner of service of his sentence. Regarding the length, Defendant argues that the trial court misapplied the enhancement factor concerning his prior criminal activity and, further, that those enhancement factors which do apply are outweighed by the applicable mitigating factor. Concerning the trial court's denial of probation or any other form of alternative sentencing, Defendant asserts that the trial court erred by denying him the presumption of alternative sentencing that he is entitled to under Tennessee Code Annotated section 40-35-102(6). Defendant maintains that the trial court instead required Defendant to show why the court should give him "the benefit of the doubt" concerning alternatives to confinement, which impermissibly shifted the burden to him. For reasons which follow, we agree with Defendant, in part, and therefore modify the manner of service of the sentence.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review of the record with a presumption that the determinations made by the sentencing court are correct. See Tenn. Code Ann. §§ 40-35-401(d), 40-35-402(d) (1997). If our review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out

under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). On the other hand, if the trial court failed to comply with the statutory guidelines, our review is de novo without a presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). Having concluded that the trial court failed to properly consider the relevant sentencing principles in this case, our review of Defendant's sentencing determination is de novo without a presumption of correctness.

On appeal, the defendant has the burden of establishing that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In determining whether the defendant has carried this burden, this Court must consider: (a) the evidence adduced at trial and/or the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the offense and criminal conduct involved; (e) the evidence and information offered by the parties on the enhancement and mitigating factors in sections 40-35-113 and 40-35-114; (f) any statement the defendant wishes to make in his own behalf about sentencing; and (g) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997).

## I. Sentence Length

The convicted offense in this case, voluntary manslaughter, is a Class C felony. Tenn. Code Ann. § 39-13-211 (1997). The sentence range for a standard Range I offender convicted of a Class C felony is not less than three (3) nor more than six (6) years. Tenn. Code Ann. § 40-35-112(a)(3) (1997). If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for Class B, C, D, and E felony offenses is the minimum sentence in the range. Where both enhancement and mitigating factors are applicable to an offense, the sentencing court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1997 & Supp. 2001). No particular weight for each mitigating or enhancement factor is prescribed by the statute. Where the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record, the weight given each factor is left to the discretion of the trial court. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Robinson, 971 S.W.2d 30, 48 (Tenn. Crim. App. 1997); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments.

The record reflects that, in setting the length of Defendant's sentence, the trial court found one mitigating factor and three enhancement factors appropriate to his case. As a mitigator, the trial court utilized factor (2), applicable where "the defendant acted under strong provocation," Tenn. Code Ann. § 40-35-113(2) (1997). The trial court reasoned that the environment in which the crime was committed, i.e., a mobile home where several people were simultaneously drinking, using drugs, and in possession of firearms, created a "dangerous situation" where "problems are going to arise

more often than not." By its statement, the trial court implied that the atmosphere was at least partially responsible for the conduct of the victim, as perceived by Defendant. However, the provocation was not sufficient to constitute a defense. We find the record supports application of this factor.

As for enhancement factors, the trial court found the following applicable: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; (9) "[t]he defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense"; and (12) "[d]uring the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim." Id. § 40-35-114(1), (9), and (12). Defendant contends that enhancement factor (1) was improperly applied and that the factors which do apply are outweighed by the mitigating factor. We disagree.

First, we find that factors (1) and (9) were applicable in this case, based upon Defendant's 1990 conviction for DUI and his use of a firearm, respectively. However, the trial court erred in its application of enhancement factor (12). The record reflects that the trial court found this factor appropriate because "the offense was committed under circumstances where the potential for bodily injury was high." Then, the court stated that this factor "encompasses the spirit of what number 3 talks about where there's more than one victim." Our review of the statutory enhancement factors reveals that the trial court was, in effect, attempting to combine three different factors, none of which actually apply. Enhancement factor (16) is applied when the crime was committed under circumstances where the potential for bodily injury *to a victim* was great. Clearly, this factor is inappropriate here because great bodily injury to the victim is an element of the offense of voluntary manslaughter. Enhancement factor (3), applicable where the offense involves more than one victim, is also inappropriate here because it is limited in scope to persons or entities who have been "injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." State v. Lewis, 44 S.W.3d 501, 507-08 (Tenn. 2001) (quoting State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994)). The term "victims" also does not include those persons who have lost a loved one or a means of support because the perpetrator of the crime killed a relative. Raines, 882 S.W.2d at 384. We are aware of only one victim in this case, Lloyd Michael, and Defendant was convicted for taking his life. Even in cases which involve numerous victims, application of factor (3) would be improper where the defendant was separately convicted for an offense concerning each victim. State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002) ("there cannot be multiple victims for any one offense . . . committed against a specific, named victim"). Lastly, the plain language of enhancement factor (12) reveals that this factor is further inapplicable since, as we have stated, there is no evidence that Defendant caused bodily injury to anyone other than the named victim when he fired his weapon.

Instead, the facts support the use of enhancement factor (10), applicable where "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10) (1997). It appears that the trial court was striving to enhance

Defendant's sentence based on his admission that he fired his weapon "several times in a wild pattern" at the scene where he killed Michael. Factor (10) has been deemed appropriate to enhance a sentence where the defendant creates a high risk to the life of a person or persons *other than the victim.* See State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App. 1995), overruled on other grounds (State v. Hooper, 29 S.W.3d 1 (Tenn. 2001)); State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). Since the evidence certainly suggests that this was the case, use of factor (10) is proper for enhancing Defendant's sentence. Where, as in the present case, the trial court fails to apply an enhancement factor which is appropriate for the offense and established by the record, the appellate court is not precluded from applying the factor when undertaking its de novo review. State v. Winfield, 23 S.W.3d 279, 283-84 (Tenn. 2000).

The trial court weighed the enhancement factors against the mitigating factor and concluded that a sentence of five years was appropriate. Even though the trial court may have erroneously applied the wrong enhancement factor for Defendant's "wild shooting" in a room containing several people during the commission of the offense, we believe that the sentence of five years is clearly justified based on the three enhancement factors found appropriate here. The latter two, factors (9) and (10), merit great weight in our opinion and substantially outweigh the mitigating factor. Defendant is not entitled to relief on this issue.

## II. Manner of Service

As for the trial court's denial of probation or any other form of alternative sentencing, Defendant asserts that the trial court improperly denied him the presumption of alternative sentencing that he is entitled to under Tennessee Code Annotated section 40-35-102(6). Defendant maintains that the trial court's insistence that he provide it with a reason *not* to sentence him to confinement impermissibly shifted the burden to him. Accordingly, Defendant implores this Court to modify his sentence of confinement to some form of alternative sentencing. We agree that the trial court failed to properly determine the manner of service in Defendant's case within the principles and statutory guidelines set forth for such purpose. Consequently, we modify Defendant's sentence to one of split-confinement, with one year in confinement followed by four years probation, for the following reasons.

Defendant is a standard Range I offender convicted of a Class C felony. Thus, he is entitled to the statutory presumption in favor of alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). The determination of whether Defendant is entitled to an alternative sentence and whether he is entitled to full probation are different inquiries, however. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is entitled to the statutory presumption favoring alternative sentencing, the state has the burden of overcoming the presumption with evidence to the contrary. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-102(6), -103 (1997). On the other hand, the defendant bears the burden of establishing suitability for full probation, even if he or she is entitled to the statutory presumption of alternative sentencing. Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-303(b)

(1997). Consequently, the issues concerning full probation and alternative sentencing must be addressed separately.

## A. Full Probation

To meet the burden of establishing suitability for full probation, a defendant must demonstrate that full probation will "subserve the ends of justice and the best interest of both the public and the defendant." Bingham, 910 S.W.2d at 456 (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for full probation: (1) the nature and circumstances of the criminal conduct involved, Tenn. Code Ann. § 40-35-210(b)(4); (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of full probation the defendant will commit another crime, see Tenn. Code Ann. § 40-35-103(5); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). See Bingham, 910 S.W.2d at 456.

Here, Defendant is eligible for full probation because his sentence is eight years or less (subject to some statutory exclusions not relevant here). See Tenn. Code Ann. § 40-35-303(a) (1997 & Supp. 2001). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). As noted above, a defendant seeking full probation bears the burden of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining the manner of service, the record reflects that trial court made the following statements:

Now, how this sentence will be served. Although the defendant committed a class--convicted of a Class C felony is a presumptive good candidate for alternative sentencing, that is a rebuttable presumption. *And I'll tell you what I look for. I look for some reason, tell me some reason why I should allow Mr. Partin or anyone, not just you, but anyone in this situation, give them the benefit of the doubt. Tell me why I should give you a chance to redeem yourself when you've committed a felony such as this, not only voluntary manslaughter but any Class C felony.*

But when we're talking about the taking of a person's life, that's such an important recognition of responsibility. And I've listened to the widow, listened to her talk about not only having to deal with her children who are suffering, which is

understandable, but the loss of income to her house, that she literally is at the point of destitution. And that's the cost of taking a life.

You know, Class C felonies also include theft of property over ten thousand dollars, but that's the type of thing that simply--you know, we can get around--victims of those types of crimes can get over. But this is the type of crime that a victim, a victim's family will never get over. *And that's the reason that I put the onus on the defendant to some extent to explain to me why, what is redeeming about your life? Tell me why you should not be in the penitentiary as opposed to being out in the public.* What is it about you that tells me you're going to do better, that you won't do this type of thing anymore, that you're going to work to support your family.

And, frankly, in this case I haven't heard anything that tells me, Mr. Partin, that you would somehow benefit society or there would be some reason to give you alternative sentencing. I looked hard for that . . . .

. . . .

But what's happened here is a man has lost his life and a family has lost a leader. And I'm looking for some reason why I should let you have an alternative sentence and I found none. I found none. And I've tried to give you the benefit of the doubt in that analysis. I simply don't think--first of all, it is your burden to show probation. I don't think that that burden has been shown . . . .

(Emphasis added.)

We concur with the trial court's above determination in one aspect: Defendant has failed to demonstrate that full probation will "subserve the ends of justice and the best interest of both the public and the defendant." We base our conclusion upon Defendant's continued consumption of alcohol, even after committing the instant offense, and the circumstances of the offense, i.e., Defendant's unabashed and "wild" shooting of a firearm into a crowd of people. However, incarceration for the full sentence term is not justified based upon the facts in the record before us.

The law is clear. When deciding the defendant's suitability for full probation, a trial court should consider the criteria specified above, i.e., (1) the nature and circumstances of the criminal conduct involved, (2) the defendant's potential or lack of potential for rehabilitation, (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. Although facts and circumstances may exist which clearly show Defendant's suitability, or the lack thereof, with regard to these criteria, the record is devoid of any indication that the trial court properly considered even one at any length, with the possible exception of the first: the nature and circumstances of the criminal conduct involved. With regard to this criterion, the trial court commented primarily on the heinous nature of the crime of manslaughter and the dire

-8-

circumstances it poses to the persons close to the victim. While the unlawful killing of another human is certainly a tragedy, we are aware that our legislature is obviously cognizant of this fact. Thus, in determining the various felony classifications and punishment ranges for various criminal activities, the legislature assigned to the offense of voluntary manslaughter a classification which it considered appropriate: voluntary manslaughter, a Class C felony, is an offense for which the offender is eligible for full probation or some other form of alternative sentence, notwithstanding the fact that a human life was taken when the offense was committed. Therefore, the fact that a life is lost in the commission of this crime cannot be a fact used to preclude full probation or any other form of alternative sentencing, until the legislature so provides.

In sum, we are mindful that a defendant bears the burden of establishing suitability for full probation. While we do not find that Defendant has demonstrated that full probation would be appropriate, the record also contains nothing which suggests that he is entirely unsuitable for other forms of alternative sentencing. Thus, based on the facts that (1) Defendant's criminal record is meager; (2) the record contains no evidence that partial probation would unduly depreciate the seriousness of the offense; (3) the record contains no proof that incarceration, with no probation, would provide an effective deterrent to others likely to commit similar crimes; and (4) the proof does not demonstrate that Defendant's potential for rehabilitation is necessarily poor, we find a sentence with partial probation is justified here. Although Defendant is not automatically entitled to full probation as a matter of law, alternative sentencing must be automatically considered by the trial court whenever the defendant is eligible. The record suggests that this did not occur.

## B. Alternative Sentencing

As a Range I standard offender convicted of a Class C felony, Defendant may be *presumed a favorable candidate* for alternative sentencing options *in the absence of evidence to the contrary*. Tenn. Code Ann. § 40-35-102(6) (1997). Such evidence includes proof that (1) "confinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct," (2) "confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or (3) "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Id. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169. In addition, a defendant's potential for rehabilitation or lack thereof may also be considered. Tenn. Code Ann. § 40-35-103(5) (1997).

Upon de novo review, we first note that the circumstances surrounding the offense in this case fail to support a finding of either (1), (2) or (3), supra. First, the record is devoid of proof that confinement is necessary to protect society by restraining Defendant based upon his long history of criminal conduct. Defendant's criminal history is scant, containing only one prior DUI conviction in 1990. Consequently, neither have measures less restrictive than confinement frequently or recently been applied unsuccessfully to him.

The record also fails to demonstrate that confinement, at least for the entire five-year term, is necessary to avoid depreciating the seriousness of the offense or that it would provide an effective deterrence to others.    Regarding the seriousness of the offense, this Court has stated that "[i]n order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) (citation omitted).  Although the death of the victim caused by Defendant's criminal behavior is certainly a serious matter, we are unable to conclude that the circumstances of the offenses in this case meet the above standard for confinement on this basis.

With respect to deterrence, our supreme court has emphasized that "the record must contain *some* proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated."  State v. Hooper, 29 S.W.3d 1, 9, (Tenn. 2000) (emphasis added).  In this case, even the minimal requirements of Hooper are unmet.  The prosecutor presented no proof whatsoever concerning the need for deterrence at Defendant's sentencing hearing.

Finally, as previously observed, Defendant may have some potential for rehabilitation.  This is a proper consideration in also determining whether sentence alternatives other than probation are appropriate.  In any case, the record also contains no proof that his potential for rehabilitation is poor.

In light of the above considerations, we conclude that the trial court erred when it failed to impose alternative sentencing in this case.  While full probation is not appropriate, we conclude that a sentence of split confinement is proper here.  The only findings by the trial court which "rebut" the statutory presumption that Defendant is a favorable candidate for alternative sentencing are statements which reflect the court's obvious abhorrence for Defendant's crime.  Tennessee Code Annotated section 40-33-306 provides, in relevant part:

> A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense.

Tenn.Code Ann. § 40-35-306(a) (1997).  Therefore, we modify Defendant's sentence for voluntary manslaughter to a sentence of five years, with one year confinement in the county jail followed by four years of probation.

## CONCLUSION

We affirm the judgment of the trial court concerning the length of Defendant's sentence. With regard to the manner of service, we are compelled to reverse the judgment of the trial court based upon the facts presented by the State at the sentencing hearing, the findings or lack thereof by the trial court, and the applicable statutes.  In lieu of total incarceration, we modify Defendant's

sentence to reflect a sentence of five years, with one year confinement followed by four years of probation.

_____
THOMAS T. WOODALL, JUDGE