**STATE of Tennessee**

v.

**Roger Dale LEWIS.**

Supreme Court of Tennessee,
at Nashville.

May 16, 2001.

Peter D. Heil, Nashville, Tennessee, for the appellant, Roger Dale Lewis.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Marvin E. Clements, Jr., Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, Jr., and WILLIAM M. BARKER, JJ., joined.

We granted review of this case to decide whether the "particularly vulnerable victim" enhancement factor, Tenn.Code Ann. § 40–35–114(4), and the "high risk to human life" enhancement factor, Tenn.Code Ann. § 40–35–114(10), were appropriate for Lewis's offense of aggravated arson. We hold that both enhancement factors were appropriate. In addition, we find that the record supports the "multiple victim" enhancement factor found at Tenn. Code Ann. § 40–35–114(3). Accordingly, we affirm the judgment of the Court of Criminal Appeals as modified and affirm the twenty-one-year sentence imposed by the trial court.

## BACKGROUND

Roger Dale Lewis was a resident of Cheryl Apartments in Hendersonville, Tennessee. In May 1992, Lewis was asked to move for failing to pay rent. Lewis threatened retaliation against the landlord. Around 3:00 a.m. on June 5, 1992, Lewis set fire to his residence at Cheryl Apartments. Five apartments were destroyed. All tenants were evacuated safely.

Lewis was convicted of five counts of aggravated arson. He received fifteen-year sentences on each count, two of which were ordered to run consecutively, for an effective sentence of thirty years. On appeal, this Court reversed four of those convictions on double jeopardy grounds and remanded for resentencing. *See State v. Lewis*, 958 S.W.2d 736 (Tenn.1997).

On resentencing, the trial court found three enhancement factors. Two[1] of the enhancement factors are relevant to this appeal: 1) "A victim of the offense was particularly vulnerable because of age or physical or mental disability"; and 2) "The defendant had no hesitation about committing a crime when the risk to human life was high." Tenn.Code Ann. § 40–35–114(4) & (10). After taking into account these enhancement factors, the trial court increased Lewis's sentence within the applicable range to twenty-five years. The court reduced the sentence to twenty-one years based on the mitigating evidence offered by Lewis. Lewis's sentence was affirmed by the Court of Criminal Appeals. We granted review.

---

1. Lewis concedes the applicability of the third enhancement factor that "the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great." Tenn.Code Ann. § 40–35–114(6).

## ANALYSIS

In *State v. Poole,* 945 S.W.2d 93, 95–96 (Tenn.1997), we related that Tenn.Code Ann. § 40–35–114 permits the use of enumerated enhancement factors only when the factors are "appropriate for the offense" and "not themselves essential elements of the offense." *Poole,* 945 S.W.2d at 95; *see* Tenn.Code Ann. § 40–35–114. These limitations are necessary to "exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense." *Id.* at 96 (quoting *State v. Jones,* 883 S.W.2d 597, 601 (Tenn.1994)). Lewis challenges both enhancement factors applied in this case on grounds that neither is "appropriate for the offense" of aggravated arson.

■ In arriving at the sentence, the trial court identified the mitigating and enhancement factors, stated the specific facts supporting the enhancement factors, and articulated how the mitigating and enhancement factors were evaluated and balanced in determining the sentence. Accordingly, our review of Lewis's sentence is de novo with a presumption of correctness of the trial court's determinations. *Poole,* 945 S.W.2d at 96; *Jones,* 883 S.W.2d at 601; *see also* Tenn.Code Ann. § 40–35–210.

### Section 40–35–114(4): The "Particularly Vulnerable" Enhancement Factor

■ Tennessee Code Ann. § 40–35–114(4) provides that a sentence may be enhanced when "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." Lewis alleges that this enhancement factor is not appropriate because there was no proof at trial that the vulnerability of the victims of this crime was *a factor* in the commission of the offense. In support of his claim, he cites to language from *Poole* in which we discussed *State v. Butler,* 900 S.W.2d 305 (Tenn.Crim.App.1994).

In *Poole,* we noted that the Court of Criminal Appeals held in *Butler* that the "particularly vulnerable" enhancement factor was inappropriate because "the State failed to show that the victim's vulnerability was a factor in the commission of the offense ." *Poole,* 945 S.W.2d at 97. Lewis contends this language requires the State to prove that he targeted these victims for arson *because of* their vulnerabilities. Under Lewis's view "factor" is synonymous with "motivation." *Accord Poole,* 945 S.W.2d at 101 & n. 2 (Drowota, J., dissenting). Our opinion in *Poole,* however, does not support this construction.

In *Poole,* we cited *Butler* for the following proposition: "Similarly, the offense may be committed in such a manner as to make the victim's vulnerability irrelevant." *Id.* at 97. *Poole* further clarified that the victim's vulnerability in *Butler* was not a "factor in the commission of the offense" because there was no connection between the vulnerability and the crime committed:

> [T]he State failed to show that the victim's vulnerability was a factor in the commission of the offense *because no victim, regardless of his or her physical or mental traits, could have resisted the offense committed in that manner.*

*Id.* (emphasis added). *Butler* is, therefore, a case in which the victim's vulnerability was *irrelevant* to the crime committed. *See also State v. Walton,* 958 S.W.2d 724, 729 (Tenn.1997) (remanding to trial court to consider "whether the offense was committed in such a manner as to render the vulnerability of the victim irrelevant"); *State v. Seals,* 735 S.W.2d 849, 853–54 (Tenn.Crim.App.1987) (holding § 40–35–114(4) inapplicable "because the vulnerability of the victims due to their respective

ages was irrelevant to the crime in question").

■ A victim's age or physical condition might make the victim "vulnerable" in a general sense. That particular vulnerability, however, may play no part in the crime. A vulnerability that is wholly irrelevant to the crime is not "appropriate for the offense" as required by Tenn.Code Ann. § 40–35–114. *See, e.g., Butler,* 900 S.W.2d at 313 (holding advanced age of victim irrelevant when "weight lifter, football player, or any other person, male or female, who possessed adequate strength to resist a crime against the person" would have been killed by defendant's reflex gunshot from a distance); *Seals,* 735 S.W.2d at 853–54 (holding advanced age of victims irrelevant when crime was theft from victim's mailboxes, and criminals had no contact with victims themselves; crime would have been no different had victims been "robust athletes"). Nothing in *Poole* should be read to place an additional burden on the State to prove that a defendant actually evaluated the vulnerabilities of his victims and then acted to capitalize on those perceived vulnerabilities.[2] To the extent prior cases may have interpreted § 40–35–114(4) otherwise, they are overruled.

■ Whether a victim is "particularly vulnerable" for purposes of Tenn.Code Ann. § 40–35–114(4) is "a factual issue to be resolved by the trier of fact on a case by case basis." *Poole,* 945 S.W.2d at 96; *State v. Adams,* 864 S.W.2d 31, 35 (Tenn. 1993). Use of the "particularly vulnerable" enhancement factor is appropriate in this case if the facts show that the vulnerabilities of the victims of Lewis's arsonous

attack had some bearing on, or some logical connection to, "an inability to resist the crime, summon help, or testify at a later date." *Poole,* 945 S.W.2d at 96 (defining "vulnerability" under § 40–35–114(4)); *see also State v. Kissinger,* 922 S.W.2d 482, 487 (Tenn.1996); *State v. Adams,* 864 S.W.2d 31, 35 (Tenn.1993).

■ The evidence showed that seven of the victims in this case were children: Renee Scalf's five-year-old and eleven-month-old children; Teresa Rumage's nine-, twelve-, and fifteen-year-old children; Denise Threat's thirteen-month-old child; and an unnamed baby who was Ms. Threat's niece. Some of these victims were infants. A victim's youth does not necessarily equate with vulnerability, however. *Poole,* 945 S.W.2d at 96; *Adams,* 864 S.W.2d at 35. The State is required to proffer evidence in addition to the victim's age to establish particular vulnerability; however, that evidence "need not be extensive." *Poole,* 945 S.W.2d at 97. Also, a court may consider the natural vulnerabilities attendant to the extreme ends of the aging spectrum by giving "additional weight ... to the age of the victim in those cases where a victim is extremely young or old." *Id.*

We find the record contains sufficient evidence in addition to the age of the victims to support the Tenn.Code Ann. § 40–35–114(4) enhancement factor. Evidence showed that some of the children had to be removed physically from the burning apartments by their parents. This evidence supports the trial court's conclusion that absent adult intervention the children might have perished in the blaze.

2. Certainly, evidence that the defendant evaluated the victim's vulnerabilities and then acted intending to capitalize on those perceived vulnerabilities would satisfy § 40–35–114(4). Such evidence is not required by the statute, however. Proof that the victim was in fact vulnerable to the crime as committed by the defendant is sufficient to satisfy use of the enhancement factor.

Furthermore, the arson was committed at approximately 3:00 a.m. The testimony established that most of the children, their parents, and other residents were sleeping at the time of the arson. Several residents had to be awakened and informed of the fire and the need to vacate their apartments. This fact supports a conclusion, unexplored by the trial court, that all of these victims were particularly vulnerable to arson due to their physical conditions at the time of the offense. *Cf. Minnesota v. Olson,* 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ("We are at our most vulnerable when we are asleep because we cannot monitor our own safety. . . ."); *State v. Hall,* 976 S.W.2d 121, 136 (Tenn. 1998) (murders committed while victims "were asleep and most vulnerable to attack"). Giving the trial court the presumption of correctness to which it is entitled, we find ample evidence in this record to support the trial court's use of the "particularly vulnerable" enhancement factor.

### Section 40–35–114(10): The "High Risk to Human Life" Enhancement Factor

■■■ Tennessee Code Ann. § 40–35–114(10) provides that a sentence may be enhanced when "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." The key language in the statute is "risk to human life was high." *Jones,* 883 S.W.2d at 602. Lewis claims that this enhancement factor also was not appropriate for the offense of aggravated arson because the general nature of the offense of aggravated arson requires a high risk to human life. *See State v. Nelson,* 23 S.W.3d 270, 271 (Tenn. 2000) ("[A]rson as a general proposition creates a dangerous exigency which has the potential to endanger not only the criminal, but also any targeted individual, members of the public, and rescue personnel."). "Enhancement factors are not in-

tended to allow sentence adjustments based on the general nature of the offense." *State v. Kissinger,* 922 S.W.2d 482, 488 (Tenn.1996). Therefore, Lewis maintains that the § 40–35–114(10) enhancement factor may not be applied to the offense of aggravated arson.

■■ The Court of Criminal Appeals held that the § 40–35–114(10) enhancement factor was appropriate because "[f]irefighters, ambulance personnel, and police faced extreme danger because of the aggravated arson." We agree that these facts may support the § 40–35–114(10) enhancement factor. Sentence enhancement factors, however, must be applied on a case-by-case basis. *State v. Lavender,* 967 S.W.2d 803, 807 (Tenn.1998). A court must, therefore, look to the specific facts and circumstances surrounding a defendant's crime to determine whether a particular enhancement factor is applicable.

There was no evidence in this case to support a finding that the lives of police and ambulance personnel were put at risk. Our review of the record shows no mention of police or ambulance involvement at the scene of the fire as the building burned. Police were involved only in the initial 911 call and the post-fire investigation. Potential risk to the lives of these uninvolved emergency personnel is, therefore, in this case an inadequate basis for enhancement under § 40–35–114(10).

The record in this case, however, clearly supports a finding that the lives of the firefighters who arrived at the scene in fact were put at risk. The firefighters arrived within a few minutes after a 911 call to police reporting the fire. A fire marshall testified that upon his arrival "there was heavy fire" in the second story of the building. A firefighter informed the fire marshall immediately upon his arrival that "the apartments had already been

searched [to make] sure there was no one in there," indicating that firefighters had actually entered the building while it burned. Four firefighters combated the blaze while the building was "fully involved" with flames. The firefighters battled the fire for forty-five minutes before it was brought under control. The fire was severe enough to destroy the top half of the building which was comprised of five apartments. Accordingly, we hold that the § 40–35–114(10) enhancement factor was properly applied based upon evidence of the risk to the lives of firefighters.

Although not addressed by the Court of Criminal Appeals, the § 40–35–114(10) enhancement factor may also apply when there are multiple victims. The offense of aggravated arson requires the presence of one or more persons within the burned structure. Tenn.Code. Ann. § 39–14–302(a). The statute therefore contemplates risk to human life. The greater penalty for aggravated arson recognizes that arson that endangers human life generally is more culpable than arson that threatens property alone. *Compare* Tenn. Code Ann. § 39–14–301(b)(1) (simple arson, a Class C Felony) *with* Tenn.Code Ann. § 39–14–302(b)(1) (aggravated arson, a Class A Felony).

■ The aggravated arson statute, however, does not take into account that the commission of arson may result in multiple deaths. Arson is elevated to aggravated arson merely by the presence of a single person in the structure. Once that fact is established, evidence that more than one life was at risk "demonstrate[s] a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." *Jones*, 883 S.W.2d at 603; *cf. State v. Kelley*, 34 S.W.3d 471, 480 (Tenn.Crim.App.2000) (permitting § 40–35–114(10) enhancement factor when defendant fired three shots

into vehicle containing two persons); *State v. Ruane*, 912 S.W.2d 766, 784 (Tenn.Crim. App.1995) (permitting § 40–35–114(10) enhancement factor when defendant shot victim in crowded tavern); *State v. Johnson*, 909 S.W.2d 461, 464 n. 1 (Tenn.Crim.App. 1995) (permitting § 40–35–114(10) enhancement factor because several bystanders were endangered by defendant's multiple shots). Use of the § 40–35–114(10) enhancement factor is, therefore, permissible when multiple lives are in fact put at risk in an arson. *See Jones*, 883 S.W.2d at 601.

■ Consequently, the § 40–35–114(10) enhancement factor was supported by the risk to the lives of the multiple residents of the apartment complex. Arson statutes impose guilt on a per structure basis rather than a per victim basis. *See Lewis*, 958 S.W.2d at 739 (allowing only a single conviction for aggravated arson to stand in spite of fact five apartments were destroyed). Clearly, the degree of culpability of a defendant who sets fire to a multiple dwelling residential structure is greater than that of a defendant who sets fire to a building occupied by a single person. In the absence of enhancement, arson statutes may fail to punish in measure to the crime.

We find that multiple-resident aggravated arson is the very type of crime to which the legislature intended the § 40–35–114(10) enhancement factor to be applicable. The record in this case establishes that the lives of many of the apartments' inhabitants were in fact jeopardized by the fire. Accordingly, the § 40–35–114(10) enhancement factor was appropriate in this case based upon risk to the lives of the multiple residents.

### Section 40–35–114(3): Multiple Victim Enhancement Factor

■ Tennessee Code Ann. § 40–35–114(3) permits sentence enhancement

when "[t]he offense involved more than one (1) victim." This enhancement factor was rejected by the trial court as one inherent in the aggravated arson statute. On de novo review, we may apply an enhancement factor not found by the trial court if the factor is appropriate for the offense and established by the record. *See State v. Winfield,* 23 S.W.3d 279, 283–84 (Tenn.2000).

Tennessee courts have recognized that a person or entity is a "victim" under Tenn.Code Ann. § 40–35–114(3) when that person or entity "is injured, killed, had property stolen, *or had property destroyed by the perpetrator of the crime." State v. Raines,* 882 S.W.2d 376, 384 (Tenn.Crim. App.1994) (emphasis added); *see also State v. Kelley,* 34 S.W.3d 471, 480 (Tenn. Crim.App.2000); *State v. Alexander,* 957 S.W.2d 1, 6 (Tenn.Crim.App.1997). The evidence in this case overwhelmingly established that multiple persons had property destroyed in the fire. This evidence was sufficient to support the § 40–35–114(3) enhancement factor.

As stated above, aggravated arson requires but one person to be present in the structure. Indeed, an aggravated arson can occur in the absence of a "victim" as defined above. Only a person's presence is required. There is no requirement of injury or death to the person who is present, and there is no requirement that property actually be destroyed. Therefore, none of the facts used to establish the essential elements of aggravated arson are used to establish the multiple victim enhancement factor.

We find the "multiple victim" enhancement factor to be appropriate for this offense. Use of the "multiple victim" enhancement factor is well-suited to the aggravated arson statute, which does not permit multiple convictions in spite of the fact that multiple persons were vic-

timized by the fire. While Lewis could not be convicted of multiple counts of aggravated arson, *see Lewis,* 958 S.W.2d at 739, his sentence may reflect that he victimized multiple persons.

## CONCLUSION

We hold that the "particularly vulnerable victim" enhancement factor, Tenn.Code Ann. § 40–35–114(4), and the "high risk to human life" enhancement factor, Tenn. Code Ann. § 40–35–114(10) were appropriate for Lewis's offense of aggravated arson. In addition, we find that the record supports the "multiple victim" enhancement factor, Tenn.Code Ann. § 40–35–114(3). Accordingly, we find that the trial court properly increased Lewis's sentence within the applicable range to reflect the enhancement factors and then reduced the sentence according to the mitigating evidence. All other issues raised by Lewis are without merit. The Court of Criminal Appeals' disposition of those issues is affirmed. Accordingly, we affirm the judgment of the Court of Criminal Appeals as modified and affirm the twenty-one-year sentence imposed by the trial court. It appearing that Lewis is indigent, costs of this appeal are taxed to the State.