# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2003

## STATE OF TENNESSEE v. JONATHAN DEAN

**Direct Appeal from the Circuit Court for Obion County**
**No. 2-153      William B. Acree, Jr., Judge**

---

### No. W2002-02422-CCA-R3-CD  - Filed June 10, 2003

---

In a bench trial, the Obion County trial court convicted the defendant, Jonathan Dean, of sexual battery and sentenced him to two years in the Department of Correction.  On appeal, the defendant contends (1) the evidence was insufficient to support his conviction, and (2) his sentence is excessive. Upon review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Joseph P. Atnip, District Public Defender; and William K. Randolph, Assistant District Public Defender (at trial), for the appellant, Jonathan Dean.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin David McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction for sexual battery arose out of events which occurred on February 18, 2002, between the defendant and the victim, R.E.,[1] a thirteen-year-old female. Gloria Easley, the victim's mother, testified she and the defendant's wife, Janice Dean, worked together, and the defendant had accompanied Mrs. Dean to Ms. Easley's residence on approximately five previous occasions.

Ms. Easley testified that on February 17th, she had a telephone conversation with Mrs. Dean regarding two rooms in her residence which she wanted painted.  Mrs. Dean informed her that the

---

[1] It is this court's policy to use initials rather than full names of minor victims of sexual abuse.

defendant would paint the rooms for $50.00. Ms. Easley stated the quoted price was too high and declined the offer. She denied inviting the defendant to her residence in order to inspect the rooms.

Ms. Easley testified that on February 18th, she remained at her home with her four children, who did not attend school that day due to a holiday. At approximately 4:30 p.m., Ms. Easley went to visit a friend while the children remained at the residence. When she returned approximately thirty minutes later, R.E. was "hysterical" when she met her at the front door. R.E. told her that the defendant sexually molested her.

Ms. Easley stated that upon learning of the incident, she became "upset" and "highly agitated." She and R.E. went to Mrs. Dean's place of employment and confronted her with the allegations. Upon returning to the residence, Ms. Easley called the police.

R.E. testified that five to ten minutes after Ms. Easley left the residence, the defendant arrived with his son. The defendant's son played with R.E.'s twin brothers ("the twins"), and R.E.'s younger brother ("the brother") was in his bedroom. R.E. sat on a couch in the living room, while the defendant watched television and drank a beer. R.E. stated the defendant asked her which channel was the "bootie-shakin" channel. He then requested she sit on an ottoman close to where he was sitting, and R.E. complied with his request.

R.E. testified the defendant asked her whether she had a boyfriend and whether she was "hot and fast." The defendant then placed his arm around R.E. and pulled her against his chest. He then began rubbing her breasts and rested his hand "in between [her] private." R.E. testified she was afraid. The defendant stated, "Do you wanna touch my private? Do you wanna feel how fat it is?" When R.E. said "No," the defendant grabbed her hand and attempted to force her to touch him. R.E. stated she touched his stomach instead. She then ran into her brother's bedroom and related the events to him.

R.E. stated that by the time she and her brother exited his bedroom, the defendant had gone, leaving his son at the residence. Approximately five minutes later, the defendant returned to retrieve his son, and R.E's brother accused him of touching R.E. in an inappropriate manner. The defendant stated they were "trippin" and that he merely gave her a hug. The defendant told R.E. and her brother that they would get into trouble and that no one would believe them. The defendant then retrieved his son and left. Ms. Easley returned to the residence approximately five minutes later.

R.E's brother, who was eleven years old when the incident occurred, testified that on February 18th, after Ms. Easley left to visit a friend, the defendant arrived at the residence accompanied by his son. The defendant's son and the twins played in his bedroom, while R.E. went into the living room. The brother stated that a short time later, R.E. came into his bedroom and said the defendant "touched [her] breasts and [her] private." The brother described R.E. as "hysterical" and stated he had to calm her. The brother stated he became angry and entered the living room; however, the defendant had gone, leaving his son at the residence. The brother testified that when the defendant returned a short time later, he confronted the defendant with R.E.'s allegations. The defendant denied touching R.E., retrieved his son, and left the residence.

-2-

Janice Dean, the defendant's wife, testified she had known Ms. Easley for four to five years, and they worked together. Mrs. Dean stated Ms. Easley never had anything nice to say about the defendant. According to Mrs. Dean, on February 17th, Ms. Easley called her and inquired about the amount of money the defendant would charge to paint two rooms. Mrs. Dean said the defendant told Ms. Easley he charged $25.00 per room, and Ms. Easley told the defendant to only paint one room. Mrs. Dean stated the defendant told Ms. Easley he would come to her house the next day at approximately 3:00 p.m.

Mrs. Dean testified that on February 18th, at approximately 6:00 p.m., Ms. Easley came to speak to her while she was at her place of employment. Ms. Easley was crying and told Mrs. Dean to keep the defendant away from her family. She informed Mrs. Dean that the defendant had touched R.E. and told R.E. to touch him. Mrs. Dean told Ms. Easley to "take care of [R.E.]," and Ms. Easley left.

The defendant testified he had been to Ms. Easley's residence on previous occasions with his wife, and he knew her children. The defendant stated that on February 18th, at approximately 2:45 p.m., he went to Ms. Easley's residence in order to paint "a couple of rooms" for her. He maintained Ms. Easley knew he was coming to the residence due to a conversation she had with Mrs. Dean on the previous night. When he inquired about Ms. Easley, R.E. informed him that she was not at the residence, and as the defendant was leaving, R.E. asked him to stay and wait for her.

The defendant testified he remained at the residence for approximately twenty minutes drinking a beer and waiting for Ms. Easley to return. He sat in a chair in the living room, and his son and the twins sat beside him. While the defendant gave the twins a hug and spoke to them, R.E. sat down beside him. The defendant stated that after he finished drinking his beer, he left the residence at approximately 3:15 p.m., while his son remained at the residence to play with the twins. Upon leaving the residence, the defendant went to Sammy Warren's residence where he remained for approximately one and one-half hours.

The defendant testified that when he returned to the residence at approximately 4:50 p.m., Ms. Easley had not yet arrived. Upon entering the driveway, R.E. and her brother, who were outside playing basketball, approached his vehicle. R.E. stated she intended to tell Ms. Easley that her brother broke his glasses. The defendant stated that after he observed that her brother's glasses were not broken, he informed R.E. that they would get in trouble if she told Ms. Easley, because they were not supposed to be outside. R.E. then stated she intended to tell Ms. Easley that the defendant touched her. The defendant testified that upon hearing this, he retrieved his son and left the residence.

The defendant denied touching R.E. at any time. He further denied being alone with the victim while he was at the residence. Rather, he maintained his son and the twins were in the living room with them.

The trial court specifically accredited the victim's testimony and convicted the defendant of sexual battery. The trial court sentenced the defendant to two years incarceration as a Range I standard offender.

-3-

# I. SUFFICIENCY

The defendant contends the evidence was insufficient to support his conviction for sexual battery. We disagree.

## A. Standard of Review

The state is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In determining whether the evidence was sufficient, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992).

Although this was a bench trial, the findings of the trial judge carry the same weight as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). Questions concerning the credibility of the witnesses and the weight and value to be given their testimony are matters entrusted to the trial judge as the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Accordingly, we may neither reweigh nor reevaluate the evidence. Cabbage, 571 S.W.2d at 835.

## B. Analysis

As applicable to the case at bar, "sexual battery" is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" accomplished by force or coercion. Tenn. Code Ann. § 39-13-505(a)(1). "Sexual contact" involves

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

*Id.* § 39-13-501(6).

In the case at bar, R.E. testified the defendant asked her whether she had a boyfriend and whether she was "hot and fast." He then placed his arm around her, pulled her up to his chest, rubbed her breasts, and rested his hand "in between [her] private." Both R.E.'s brother and Ms. Easley described R.E. as "hysterical" after the incident occurred. We conclude the evidence was sufficient to support the defendant's conviction for sexual battery.

In his brief, the defendant alleged various inconsistencies in the testimony of the state's witnesses. However, none of these alleged inconsistencies relate to the elements of the offense of sexual battery. Rather, these questions involve the credibility of the witnesses, which is a matter within the purview of the trial judge as the trier of fact. *See* Pappas, 754 S.W.2d at 623. This issue is without merit.

## II. SENTENCING

The defendant next contends that his sentence is excessive. Again, we disagree.

### A. Sentencing Hearing

During the sentencing hearing, the defendant testified he was thirty-eight years old, married, and had three children. He gave a statement to the probation officer for the presentence report in which he denied committing the offense, and, during the hearing, he continued to maintain his innocence. The defendant admitted he was untruthful to the probation officer regarding where he attended high school. During his testimony, the defendant further denied criminal wrongdoing as to two prior drug possession convictions and a prior conviction for driving under the influence.

The defendant requested the trial court grant him probation or some form of alternative sentencing. He maintained he was not a threat or danger to society and expressed his desire to support his family. Janice Dean, the defendant's wife, also requested the trial court consider his family's needs in imposing a sentence.

### B. Trial Court's Findings

The trial court sentenced the defendant to two years incarceration as a Range I standard offender. The trial court applied enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and enhancement factor (4), "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." *See* Tenn. Code Ann. § 40-35-114(1), (4) (1997).[2] The trial court found no mitigating factors applied. It then properly recognized the offense of sexual battery to be a Class E felony with a presumptive sentence of one year. *See* Tenn. Code Ann. § 39-13-505(c). However, after applying the two enhancement factors, the trial court imposed a two-year sentence.

The trial court found that although the defendant was presumed to be a favorable candidate for alternative sentencing, the state produced sufficient evidence to rebut this presumption. The trial court found confinement was necessary to protect society from the defendant, who had a long history of criminal conduct; confinement was necessary to avoid depreciating the seriousness of the offense; and less restrictive measures have been unsuccessfully applied to the defendant. The trial court noted the defendant expressed no remorse and was incapable of rehabilitation. It then ordered the defendant's sentence be served in incarceration.

---

[2] The 2002 amendment added present (1), "[t]he offense was an act of terrorism," and renumbered former (1) through (22) as present (2) through (23), respectively.

## C. Standard of Review

When a defendant challenges the length, range, or manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after duly considering and weighing the factors and principles set out under the sentencing law, and its findings are adequately supported by the record, then we may not disturb the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). However, if the trial court failed to comply with the statutory guidelines, we must review the sentence *de novo* without a presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

## D. Analysis

In his brief, the defendant contends the trial court erred in imposing the maximum sentence of two years. However, the only arguments the defendant makes in support of his contentions are that "Mr. Dean had a good marriage" and "His children need him." Because the defendant has failed to include sufficient argument in his brief regarding the basis upon which the trial court allegedly erred, this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b).

However, upon reviewing the record, we conclude the trial court erred in applying enhancement factor (4), the offense involved a victim who was "particularly vulnerable because of age or physical or mental disability." Tenn. Code Ann. § 40-35-114(4) (1997); *see* State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (noting that the application of enhancement factor (4) is appropriate provided the vulnerabilities of the victim relate to "an inability to resist the crime, summon help, or testify at a later date"); State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993) (holding that this enhancement factor "relates more to the natural physical and mental limitations of the victim than merely to the victim's age"). In applying this enhancement factor, the trial court stated the defendant was a friend of the victim's family, and the victim was "quite young." We conclude the victim's age, under the facts and circumstances of this case, did not justify application of this enhancement factor.

We conclude the trial court properly applied enhancement factor (1) due to the defendant's prior history of criminal convictions. *See* Tenn. Code Ann. § 40-35-114(1) (1997). The defendant's presentence report reveals the defendant has a prior misdemeanor drug conviction, a prior felony drug conviction, a disorderly conduct conviction, a DUI conviction, two convictions for driving without a license, nineteen speeding violations, and seven seat belt violations. The defendant's extensive history of criminal conduct warrants the strong application of this enhancement factor.

The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). In reviewing the record *de novo*, we place great weight on enhancement factor (1) and decline to disturb the two-year sentence.

## III. CONCLUSION

We conclude the evidence was sufficient to support the defendant's conviction for sexual battery. Furthermore, the defendant's two-year sentence is not excessive. Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE