IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 29, 2013

# STATE OF TENNESSEE v. TIMOTHY B. LENARDUZZI

**Appeal from the Criminal Court of Sumner County**
**No. 425-2011    Dee David Gay, Judge**

**No. M2012-01236-CCA-R3-CD - Filed February 5, 2013**

Timothy B. Lenarduzzi ("the Defendant") pleaded guilty to two counts of aggravated sexual exploitation of a minor and three counts of sexual exploitation of a minor. In his plea agreement, he agreed to a sentencing range of "[e]ight to [t]welve years at one hundred percent on each count to run concurrent," leaving the length of the sentence to be determined by the trial court. After a hearing, the trial court sentenced the Defendant as a Range I offender to eleven years for each aggravated sexual exploitation of a minor conviction and eleven years for each sexual exploitation of a minor conviction, all to be served concurrently. On appeal, the Defendant argues that the length of his sentence is improper. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Brent Horst, Nashville, Tennessee, for the appellant, Timothy B. Lenarduzzi.

Robert E. Cooper, Jr., Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; L. Ray Whitley, District Attorney General; and Jayson Criddle, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Defendant was indicted on January 9, 2011, on two counts of aggravated sexual exploitation of a minor and twenty-nine (29) counts of sexual exploitation of a minor. His

charges arose out of his extensive collection of child pornography which was discovered following an investigation. He pleaded guilty to both counts of aggravated sexual exploitation of a minor and to three counts of sexual exploitation of a minor. The remaining indicted counts of sexual exploitation of a minor were nolle prossed. With regard to sentencing, the Defendant agreed to a range of "[e]ight to [t]welve years at one hundred percent on each count to run concurrent," leaving the length of the sentence to be determined by the trial court. Following a sentencing hearing, the trial court sentenced the Defendant to eleven years on each count, to be served concurrently. The Defendant timely appealed his sentence, arguing that the length of his sentence is improper.

At the sentencing hearing, the presentence report was admitted as an exhibit without objection, and it is included in the record before us.

Defense counsel called Dr. Donna Moore, qualified as an expert in psychosexual behavior, to testify at the sentencing hearing.[1] Dr. Moore testified that she first evaluated the Defendant on August 15, 2011. The Defendant began psychological treatment on September 16, 2011, and Dr. Moore stated that the Defendant had been consistent in his treatment attendance since that time. She considered the Defendant to be compliant to treatment, stating, "In fact, he has come in and taken responsibility for behaviors and worked in treatment fairly quickly relative to other people that have come." In Dr. Moore's opinion, the Defendant seemed amenable to treatment. When asked about the Defendant's likelihood to re-offend, Dr. Moore answered,

> Well, it's difficult when the only charged behavior relates to possession of child images or where there's not a specific victim targeted. So we can talk qualitatively rather than quantitatively. Qualitatively I assess [the Defendant] is at risk for sexual misconduct, particularly sexual misconduct involving using images in the future. So it's hard to assign a number to his risk level.

Dr. Moore continued that some individuals' risks are elevated by a prior criminal history but that the Defendant did not have such a history. She acknowledged that she was aware of allegations that the Defendant had committed an offense with a seventeen-year-old but stated that his risk level, based on past criminal history, still would be low.

When asked why an individual might be sexually attracted to children, Dr. Moore answered:

---

[1] At the request of defense counsel and consent by the State, the trial court allowed this witness to testify before the State presented its proof.

Well, my understanding is that sexual interests in general are hardwired, and people have preferences that are kind of inexplicable. . . .

So someone may have deviant interests; they don't have to act on those interests. . . .

So if somebody has a preference and they're getting a lot of feedback that it's okay to engage in that preference, which is what the internet provides, it provides a culture that says this is okay, that someone could have those influences. Treatment is to eradicate and to kind of give a different perspective to say, yes, you may have these internal feelings or these physical attractions; you can make different decisions, and we can talk about the distortions that made you think those things were okay in the first place.

Dr. Moore testified that she did not formally diagnose the Defendant but stated that his "working diagnosis is hepophilia or sexual attraction to minors with a rule out for pedophilia or sexual attraction to prepubescent children." She explained that "[p]edophilia is the sexual attraction to children who have not developed secondary sexual characteristics," whereas hepophilia is the sexual attraction to children "who are still minors but may have developed and start to appear as more mature."

On cross-examination, Dr. Moore acknowledged that some of the videos the Defendant possessed portrayed sexual contact with "very young" children. She was not aware of a story the Defendant wrote about a five-year-old performing oral sex on him. Dr. Moore explained that she has not ruled out a diagnosis of pedophilia for the Defendant but had not yet received enough information to come to that conclusion. She acknowledged, however, that some of the images and videos found would point toward a tendency for pedophilia.

The State called Special Agent Nick Christian with the Tennessee Bureau of Investigation ("TBI") as a witness at the sentencing hearing. He testified that he works within digital forensics and that he was the case agent for the Defendant's case. Another agent (Special Agent Traci Allen) had begun an undercover investigation on February 1, 2011. Through this investigation, she had identified an internet protocol ("IP") address that "appeared to be in possession of illegal images." Special Agent Allen found that this IP address possessed images and videos which appeared to be child pornography. Special Agent Allen then contacted the internet service provider, which provided her with a physical address and name, the home address and identity of the Defendant. According to Special Agent Christian, the charges for sexual exploitation of a minor arose out of the fact that

Special Agent Allen downloaded the pictures from the Defendant's computer, such that he distributed the pictures to her.

Special Agent Christian conducted surveillance on the address provided by the internet service provider and determined that it was, in fact, the Defendant who lived there, with the possibility that he had a female roommate or girlfriend. After obtaining a search warrant, TBI agents, including Special Agent Christian, approached the house to execute the warrant. The Defendant answered the door and, after learning the purpose of the house call, invoked his right to legal counsel. The agents entered the home and interviewed the Defendant's roommate. From their search, the agents found digital media and a locked file box. In the box, they found a notebook with "graphic" stories, "some floppy discs and CDs and things containing some questionable material." The agents took a picture of a sticker inside the box identifying the box as belonging to the Defendant. They also found several pairs of women's panties but never identified to whom the panties belonged. At the conclusion of the search, the agents confiscated several computers and external hard drives, as well as the items found in the locked file box. Special Agent Christian explained that they took the roommate's computer as well, given that they did not yet know who was involved in the possession of child pornography. However, no images were found on the items belonging to the roommate.

Upon review of the digital media, Special Agent Christian found many images that he sent to the National Center for Missing and Exploited Children ("NCMEC") to confirm that the images were, in fact, child pornography. The Defendant owned a martial arts studio, and included in the confiscated items from the Defendant's home were pictures of several students from the studio. Special Agent Christian noted, however, that the students were not nude in the pictures that the Defendant possessed. After interviewing many of the parents at the martial arts studio, Special Agent Christian did not encounter any instances of "contact offenses" that the Defendant had made with the students there.

Further investigation of the computer files, however, did reveal numerous images of a minor who Special Agent Christian later determined had a sexual relationship with the Defendant at age seventeen. He also found letters, admitted as exhibits at the sentencing hearing, written by the Defendant chronicling the relationship. He interviewed the minor's parents and learned that the Defendant had known the minor since she was fourteen years old from his guest teaching at a martial arts studio in Brentwood.

Next, Special Agent Christian discussed in detail the extensive forensic examination of the data files obtained. The majority of the digital media came from the computer found in the Defendant's bedroom, as well as an external hard drive. Additionally, some floppy discs contained child pornography, and a Compaq Presario "contained three stories regarding

minors." The computer found in the Defendant's bedroom contained 207 images and twenty-eight (28) videos.

The external hard drive contained approximately 400,000 files, consisting of mostly images and thousands of videos. Special Agent Garnett, the forensic examiner, spent over two months going through the images to flag those images that possibly were child pornography. At some point, Special Agent Garnett stopped watching all of the videos. From Special Agent Garnett's examination, he found "25,372 images containing possible minors nude or engaged in sexually explicit activity." Special Agent Christian stated that it appeared that the Defendant downloaded the images and videos through his desktop computer but stored the media on his external hard drive. The file date of the images on the external hard drive traced back to 2009, when at least 70,000 images were mass-transferred.

Before showing the images to the court, defense counsel objected to their presentation, given that the Defendant did not dispute the number of images or the contents of the images. The trial court noted but overruled the objection. Special Agent Christian stated that he submitted all of the images and video suspected as child pornography to the NCMEC, which confirmed that at least 383 images and nine videos contained known victims of child pornography. According to the report by the NCMEC, admitted as an exhibit at the hearing, the images and videos matched twenty-four confirmed victims of child pornography.

On cross-examination, defense counsel asked about the size of the Defendant's collection, compared to previous investigations. Special Agent Christian testified that, compared to the other approximately fifty cases which he had investigated, he considered the size of the Defendant's collection "very large." Moreover, he believed that it would take "a substantial amount of [the Defendant's] time" to accumulate a collection this large.

The trial court asked Special Agent Christian about the remaining images. Special Agent Christian stated that the vast majority of the images pertained to the children captured in the child pornography but that the other pictures did not depict the children completely nude.

The State rested its proof, and the defense continued with its proof. Debbie Lenarduzzi, the Defendant's mother, read her written statement to the trial court, noting that the Defendant is a respectful man who never used drugs or "went out drinking and partying."

Daniella Lenarduzzi, the Defendant's brother, also recited his written statement to the trial court, stating that the Defendant already had enough punishment because he no longer would be able to teach martial arts, the "thing he loves the most."

-5-

Additionally, Roberto Lenarduzzi, the Defendant's father, prepared a written statement to read before the trial court. In this statement, he explained that the Defendant "made a mistake" and "needs help." He asked the trial court to consider an alternative to prison time based on his belief that the Defendant is "not a predator."

At the conclusion of the proof at the sentencing hearing, the trial court considered the first statutory enhancement factor, the Defendant's "previous history of criminal convictions or criminal behavior," but did not place much weight on this factor. Tenn. Code Ann. § 40-35-114(1) (2010). The trial court did place weight on the fact that the case involved more than one victim, noting that the Defendant possessed almost one-half million images. See id. § -114(3). Additionally, the trial court found that the victim was particularly vulnerable based on age, physical, or mental disability. See id. § -114(4). As support, the trial court referenced one of the videos shown to the trial court which depicted a girl approximately eight years old fully clothed on a bed and then progressed to show someone rape the child. The trial court also found that the enhancement factor applied which considers whether "[t]he offense involved a victim and was committed to gratify the [D]efendant's desire for pleasure or excitement." Id. § -114(7). He noted the stories written by the Defendant and the disturbing nature of their contents.

As for mitigating factors, the trial court considered the fact that the Defendant did not have any prior criminal convictions. See Tenn. Code Ann. § 40-35-113(13) (2010). The trial court then considered the seriousness of the offense and noted that "child pornography is about as serious as it gets." Next, the trial court considered "a punishment sufficient to prevent crime and promote respect for the law." The court stated that the repeated nature of the acts over time demonstrated a lack of respect for the law. Lastly, the trial court considered the Defendant's potential for rehabilitation. The court noted that the Defendant had engaged in this activity since he was sixteen years old and found that the Defendant was not likely to change.

Given all the court's findings, the trial court sentenced the Defendant to eleven years at 100% for each conviction, noting his consideration of the one mitigating factor in not sentencing the Defendant to the maximum sentence of twelve years. The trial court ordered the sentences to run concurrently, as agreed upon in the plea agreement. On appeal, the Defendant argues that the length of his sentence is excessive.

## Analysis

The Defendant has challenged the length of his sentence, contending that the trial court "failed to properly consider the principles of sentencing." Prior to imposing sentence, a trial court is required to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections ] 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The referenced "principles of sentencing" include the following: "the imposition of a sentence justly deserved in relation to the seriousness of the offense" and "[e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs." Tenn. Code Ann. § 40-35-102(1), (3)(C) (2010). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(4), (5) (2010).

Our Sentencing Act also mandates as follows:

In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

-7-

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2010).

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We first note that the Defendant failed to include a transcript of the guilty plea hearing. It is the Defendant's duty to compile a complete record for appeal. See Tenn. R. App. P. 24(b). Our supreme court, however, recently held that, "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in Bise." State v. Caudle, __S.W.3d__, __, 2012 WL 5907374, at *6 (Tenn. Nov. 27, 2012). As indicated above, the facts underlying the Defendant's guilty plea were adduced during the sentencing hearing. Thus, based upon the specific facts of this case, we conclude that the record is sufficient to afford appellate review of the Defendant's sentence.

Next, we turn to the Defendant's claim on appeal that the length of his sentence was excessive. The Defendant agreed to a sentencing range of "[e]ight to [t]welve years at one hundred percent on each count to run concurrent," leaving only the length of the sentence to be determined by the trial court. In this case, the Defendant pleaded guilty to three counts of sexual exploitation of a minor and two counts of aggravated sexual exploitation of a minor, Class B felonies,[2] which carry a sentence of eight to twelve years for a Range I

_____

[2] See Tenn. Code Ann. § 39-17-1003, 1004 (2010). Pursuant to Tennessee Code Annotated section
(continued...)

-8-

offender.  See Tenn. Code Ann. § 40-35-112(a)(2) (2010).  Therefore, the trial court's sentence of eleven years is within the authorized term for a Class B felony.

The trial court determined that the following enhancement factors were established by the proof submitted at the sentencing hearing:  the Defendant has "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; "[t]he offense involved more than one (1) victim"; the "victim of the offense was particularly vulnerable because of age or physical or mental disability"; and "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement."  See Tenn. Code Ann. § 40-35-114(1), (3), (4), (7) (2010).  The trial court's findings as to most of the enhancement factors are supported by the record.  The trial court placed little weight on the first factor, and we note that, although the Defendant had no prior criminal convictions, testimony established that the Defendant had engaged in a sexual relationship with a minor.  Additionally, included in the record are letters written by the Defendant to the minor describing the sexual relationship.  Testimony also established that the Defendant possessed at least 383 images and nine videos which contained twenty-four confirmed victims of child pornography, thus indicating more than one victim.  Finally, proof at the hearing established the Defendant's prurient intent, evidenced by the graphic stories he wrote involving sexual encounters with children.

As for the factor regarding the vulnerability of the victims based on "age or mental or physical disability," Tenn. Code Ann. § 40-35-114(4), our supreme court has stated that "[a] victim's youth does not necessarily equate with vulnerability."  State v. Lewis, 44 S.W.3d 501, 506 (Tenn. 2001).  Rather, "use of the 'particularly vulnerable' enhancement factor is appropriate . . . if the facts show that the vulnerabilities of the victims . . . had some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date.'"  Id. (quoting State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997)).  From the testimony adduced at the sentencing hearing, the only known fact about the victims was the age of one particular victim depicted in a video who was eight years old.  No other

---

[2](...continued)
39-17-1003, sexual exploitation of a minor is a Class B felony if the number of images or materials exceeds one hundred.  Here, all three indicted offenses for sexual exploitation of a minor pertained to the possession of more than one hundred images.  Under Tennessee Code Annotated section 39-17-1004, the offense of aggravated sexual exploitation of a minor is a Class B felony if the number of images or materials exceeds twenty-five.  In the present case, both indicted offenses for aggravated sexual exploitation of a minor arose out of possession with the intent to distribute, transport, or exchange more than twenty-five images.  Moreover, Tennessee law requires that a defendant serve 100% of the sentence imposed by trial court for convictions of "[s]exual exploitation of a minor involving more than one hundred (100) images" and "[a]ggravated sexual exploitation of a minor involving more than twenty-five (25) images."  Tenn. Code Ann. § 40-35-501(i) (2010).

evidence was adduced that established the vulnerability of the victims. Therefore, based upon the limited evidence available in the record, the evidence does not support a finding as to this enhancement factor.

The trial court also determined that one mitigating factor was established by the proof submitted at the sentencing hearing: that the Defendant had no prior criminal convictions. See Tenn. Code Ann. § 40-35-113(13) (2010) (the trial court may consider, as a mitigating factor, "[a]ny other factor consistent with the purposes of this chapter"); see also State v. Williams, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995) (noting that "absence of a prior criminal record may be considered under the catch-all provision of Tennessee Code Annotated section 40-35-113(13)") (citation omitted). This mitigating factor is supported by the presentence report.

A trial court's weighing of enhancement and mitigating factors is "left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. The trial court, in weighing all of the enhancement factors and the one mitigating factor, sentenced the Defendant to eleven years, while also noting and applying the principles of sentencing. See Tenn. Code Ann. § 40-35-102(1), (3)(C).

The Defendant specifically asserts that the trial court improperly considered the principles of sentencing in finding that the Defendant was not amenable to rehabilitation. He asserts that Dr. Moore's testimony that the Defendant was "amenable to rehabilitation and was at a low risk to re-offend" contradicts such a finding by the trial court. This Court has held that we "give[] great weight to the determinations made by the trial court concerning the credibility of witnesses." State v. Melvin, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995). Moreover, we note that, although Dr. Moore testified that she believed that the Defendant was "amenable to treatment," she also stated that the Defendant was "at risk for sexual misconduct, particularly sexual misconduct involving using images in the future." Thus, we do not find that the trial court erred in its consideration of the issue of rehabilitation.

The Defendant also claims that the trial court erred in using biblical references during the sentencing. Our supreme court has held that "[r]eference to religious law during a criminal trial has been disapproved in this State, and trial court judges should therefore refrain from any discussion on religious law. Absent some showing by the defendant, however, that he was prejudiced, such comments do not require reversal." State v. Stephenson, 878 S.W.2d 530, 541 (Tenn. 1994), abrogated on other grounds by State v. Saylor, 117 S.W.3d 239, 246 (Tenn. 2003) (citation omitted). The trial court, in relaying its findings, referred to the testimony given by the Defendant's mother that Jesus, in his teachings, stated, "let anyone who is without sin cast the first stone." The trial court responded to this comment by stating,

What Jesus was doing was confronting hypocrites with sin in their life. He was not making a commentary on government and justice. It's very clear that the Bible says that every person be in subjection to their governing authority. . . . It's really not appropriate to refer to that in this particular situation.

I want everyone to understand here that we're not talking about forgiving sins of somebody else. That's not my responsibility. My responsibility here is to impose a just sentence under the law. We must be good citizens, and we must follow the law.

The trial court made two other references that could be construed as biblical references. While perhaps better practice would countenance refraining from making these remarks, given the overall findings of the trial court on the sentencing issue, we hold that these remarks clearly do not rise to the level of reversible error.

In summary, we hold that the trial court imposed this sentence in a manner consistent with the purposes, principles, and goals of the Sentencing Act. Thus, even if the trial court misapplied the enhancement factor as to the vulnerability of the victims, we discern no abuse of discretion by the trial court. See Bise, 380 S.W.3d at 709 ("[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision."). Accordingly, the Defendant is entitled to no relief.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE