# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 17, 2003

## STATE OF TENNESSEE v. CHRISTIE DIANNE WEBB

**Direct Appeal from the Criminal Court for Wilson County**
**No. 01-0568     J. O. Bond, Judge**

---

**No. M2002-02461-CCA-R3-CD - Filed November 14, 2003**

---

The defendant pled guilty to reckless aggravated assault of her three-month-old son and was sentenced to four years in the Tennessee Department of Correction. The trial court incorrectly applied some of the enhancement factors. However, the factors that were correctly applied substantially outweighed any incorrectly applied factors. There were no mitigating factors. The record does not indicate that the sentence was excessive. In light of the defendant's extensive criminal history, the trial court did not err in denying alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Brody N. Kane, Lebanon, Tennessee, for the appellant, Christie Dianne Webb.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Robert N. Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 12, 2000, the Wilson County Grand Jury returned a true bill against Christie Diane Webb, charging her with aggravated assault, a Class C felony, under Tennessee Code Annotated section 39-13-102(b). She was charged with failing to protect her infant son, Ryan Anthony Webb, from the child's father, Anthony Shannon Lane. On July 9, 2002, the defendant pled guilty to reckless aggravated assault, a Class D felony, and was sentenced as a Range I, standard offender to four years, to be served in the Tennessee Department of Correction. The defendant timely filed a notice of appeal contending that (1) her sentence was excessive, and (2) the trial court erred in failing to consider her for alternative sentencing.

**Facts**

The following factual background of this case is taken from the pre-sentence report contained in the record. On August 21, 2000, Anthony Shannon Lane reported to his child's mother, Christie Dianne Webb, that their three-month-old son, Ryan Anthony Webb, had fallen of the bed. The defendant was outside when the father came out to her with the child in his arms. The father stated that the baby had been in an infant car seat unrestrained and positioned on the bed. The father told the defendant that he had stood up from the bed and taken about eight to ten steps. He then turned around and saw that the baby had fallen onto the floor face down. He said that the child was lying very still. He rolled him over and picked him up. He stated that he shook the child slightly and took him outside to the defendant.

The defendant said that she took the child in her arms and hurriedly went inside. She stated that she laid the baby on the floor and called 911. The EMT's arrived, and the baby was taken to University Medical Center. Later that day, the baby was admitted to Vanderbilt Children's Hospital.

Dr. Ellen Wright Clayton, a professor of pediatrics at Vanderbilt Children's Hospital, stated to Detective Pat Hamblen that the injuries the child sustained were "the result of severe, life threatening non-accidental trauma as well as old non-accidental trauma." Dr. Clayton also stated that there was "no possibility that falling off the bed caused these injuries."

The Department of Children's Services reported in the victim impact statement (prepared when the child was two years old) that the child is a medically fragile child who is in the custody of adoptive services. Children's Services states that he will never be able to live a normal life as a result of the physical abuse (Shaken Baby Syndrome) he sustained at three months old. His medical diagnosis include cerebral palsy, quadriplegia, seizure disorder, and blindness. He requires speech, physical, and occupational therapy. He has numerous neurological and developmental issues. Children's Services states that the child will require indeterminate ongoing medical services, as well as physical special equipment to assist his caretaker with his everyday needs.

On July 9, 2002, the defendant pled guilty to reckless aggravated assault and was sentenced to four years to be served in the Tennessee Department of Correction. She now appeals this sentence.

**Analysis**

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often, or recently, been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential, or lack of potential, for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

After reviewing the record, we conclude that the trial judge considered the sentencing principles and all relevant facts and circumstances. Therefore, we review the trial court's judgment *de novo* with the presumption of correctness. The defendant argues that the trial court erred in failing to apply any mitigating factors in this case. Specifically, the defendant contends that mitigating factors one, three, four, nine, eleven, and twelve should apply. See Tenn. Code Ann. §

40-35-113. There is nothing whatsoever in the record that supports the defendant's contention that factors one (no serious bodily injury), three (justification), four (played minor role), eleven (unusual circumstances), or twelve (under duress or domination) should be applied. The defendant contends that factor nine (assisted authorities) should be applied, because the defendant called 911 after she discovered the baby was injured and was cooperative with the medical staff at the hospital. We hold that her actions were not sufficient to support application of mitigating factor nine.

The trial court applied several enhancement factors in this case. The trial court found that enhancement factors one (defendant has a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range), two ( was a leader in the commission of the offense), four (the victim was particularly vulnerable because of age), thirteen (the defendant was out on bond), and fifteen (the defendant abused a position of public trust) did apply to this case.[1] See Tenn. Code Ann. § 40-35-114.

The record supports the trial court's application of factor one (prior criminal history). The defendant's prior record reveals that she has been convicted of possession of Schedule IV drugs, possession of Schedule II drugs, worthless checks, unlawful drug paraphernalia, forgery, shoplifting, contributing to the delinquency of a minor, and theft. Enhancement factor one was correctly applied. Enhancement factor four was also correctly applied by the trial court. The victim in this case was only three months old at the time the offense was committed. While we understand that the victim's age alone does not necessarily establish vulnerability, a three-month-old baby depends on his parents for protection and is, essentially, helpless. See State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (use of enhancement factor four is appropriate if the facts show that "the vulnerabilities of the victim . . . has some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date'" (citations omitted)). Enhancement factor thirteen (out on bond) was correctly applied by the trial court. The defendant's record reveals that she was on probation for her prior drug offenses at the time the current offense occurred.

Enhancement factor two (leader) should not have been applied to this case. The offense itself, reckless aggravated assault, only involved one actor, which was the defendant. The only co-defendant in this case was charged with aggravated child abuse. The trial court erred in its application of factor two. The trial court also erred in its application of enhancement factor fifteen (abused position of public trust). The defendant was convicted of reckless aggravated assault under Tennessee Code Annotated section 39-13-102(b). Section 39-13-102(b) provides in pertinent part that aggravated assault occurs when "a person . . . being the parent or custodian of a child . . . intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault."

---

[1] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). "Terrorism" is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

The defendant's position as the victim's parent should not have been used as an enhancement factor since being the parent was an essential element of the offense.

The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). The enhancement factors that were correctly applied in this case substantially outweigh any factors that were incorrectly applied. There were no applicable mitigating factors. The record does not reveal that the sentence imposed was excessive. In light of the defendant's extensive criminal history and the facts of this case, the trial court did not err in denying the defendant alternative sentencing.

_____
JOHN EVERETT WILLIAMS, JUDGE
