IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2007 Session

**STATE OF TENNESSEE v. ERIC D. CHARLES**

**Direct Appeal from the Circuit Court for Madison County**
**No. 06-502     Donald H. Allen, Judge**

_____

**No. W2007-00060-CCA-R3-CD  - Filed January 30, 2008**

_____

The defendant, Eric D. Charles, pled guilty in Madison County Circuit Court to aggravated robbery and was sentenced as a Range I, standard offender to ten years in the Department of Correction.  The defendant challenges the trial court's application of two enhancement factors; the State concedes that one of the factors was improperly applied.  We conclude that the record supports the trial court's application of the second enhancement factor and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Danny R. Ellis, Jackson, Tennessee, for the appellant, Eric D. Charles.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**<u>FACTS</u>**

At the sentencing hearing, Kenneth Rhodes, a special agent with the Tennessee Bureau of Investigation (TBI), testified that on January 5, 2006, he was working with a confidential informant, Eric Hines, to set up an undercover drug purchase from a man named Travont Cole.  Agent Rhodes and Hines were waiting for Cole in a motel room in Madison County when the defendant arrived.  The defendant, whom Agent Rhodes had never previously encountered, immediately pointed a gun at Hines, who raised his hands and backed into the bathroom.  Agent Rhodes testified that the defendant took from him a cell phone, a pager, and some money.  A struggle then ensued and the defendant fled from the room into a stairwell, where he was apprehended by other TBI officers.

Agent Rhodes never saw the defendant with any narcotics for sale. He testified that he later saw Cole in TBI custody in the parking lot, seated next to the "getaway car." He also said that there was a bullet hole in the motel room door which Hines repaired.

On cross-examination, Agent Rhodes testified that he did not see a doctor or file a workers' compensation claim as a result of the robbery. He further acknowledged that Hines was not struck by the defendant, did not have any bruises or medical bills, had not seen a psychiatrist or psychologist, and had incurred no medical expenses stemming from the robbery. Agent Rhodes testified that he fired the bullet that struck the motel room door.

TBI Agent Romanda Roberson was conducting surveillance in the parking lot of the motel in conjunction with the attempted undercover drug purchase. She observed a bluish-green Cadillac containing two individuals enter the parking lot. The driver exited the vehicle, and the passenger slid into the driver's seat. As the driver walked up the stairwell of the motel, the passenger backed the vehicle into a parking spot at the other end of the parking lot. From her position, Agent Roberson could not identify either individual but could discern that both were male. Less than a minute after the driver exited the vehicle, Agent Roberson heard the distress call from Agent Rhodes and took the occupant of the Cadillac into custody. She later learned that the occupant was Cole, the subject of the undercover drug investigation. Agent Roberson never saw any drugs on the defendant, nor did she observe narcotics being recovered from him. Prior to the day of the robbery, she had never contacted the defendant and had no reason to investigate him.

On cross-examination, Agent Roberson agreed with defense counsel that Hines did not go to the hospital, receive any physical injuries, or consult a psychiatrist or psychologist as a result of the robbery. She testified that all of the property taken during the robbery was TBI property possessed by Agent Rhodes.

On redirect examination, Agent Roberson testified that she observed the bullet hole in the door of the motel room and that Hines repaired the door himself. On recross examination, Agent Roberson testified that Hines does not own the motel and had not submitted a repair bill to TBI for the cost of fixing the hole in the door. She agreed that the bullet hole was caused by Agent Rhodes' gun.

The defendant offered several witnesses on his behalf at the sentencing hearing. Teresa Ann Robinson, his aunt, testified that she had taken an active role in the defendant's life when he was younger. She said the defendant was a good student and a star athlete who worked during high school. Mae Norman Coleman, the defendant's aunt, said that the defendant was smart, respectful, and a hard worker. Wayne Alexander, an assistant principal at the defendant's high school, testified that the defendant is intelligent, treated his teachers with respect, and was an outstanding athlete and a leader in school. Larry Charles, the defendant's father, testified that the defendant attempted to use his athletic ability to help him get a college degree but lost his scholarship, after which he became quiet and withdrawn. He said that this crime was completely out of character for his son, who is timid and knows nothing about how to use a gun. The defendant, speaking on his own behalf,

apologized to Agent Rhodes, the trial court, and his family; acknowledged that his behavior was wrong; and thanked his family for their support.

The trial court found that the defendant was a Range I, standard offender. Aggravated robbery is a Class B felony; the authorized sentencing range for Range I offenders guilty of a Class B felony is eight to twelve years. Tenn. Code Ann. §§ 39-13-402(b); 40-35-112(a)(2) (2006). The court sentenced the defendant to ten years incarceration, finding as enhancement factors that he was a leader in the commission of an offense involving two or more criminal actors and that the offense involved more than one victim. See Tenn. Code Ann. § 40-35-114(2), (3) (2006). The court found that the defendant's conduct was mitigated by his expression of remorse and acceptance of responsibility for his actions.

## ANALYSIS

The defendant argues that the trial court misapplied both enhancement factors and that we must reverse his sentence and remand to the trial court for a new sentencing hearing. The State concedes that factor (3), the offense involved more than one victim, was improperly applied but argues that the defendant is not entitled to relief because a recent amendment to Tennessee's sentencing laws prohibits defendants from appealing the weighing of enhancement and mitigating factors. In the alternative, the State argues that factor (2), the multiple criminal actor enhancement factor, was properly applied.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for

the offense" and "not already an essential element of the offense." Tenn. Code Ann. § 40-35-114 (2006).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Initially, we must address the State's argument that the defendant may not appeal the trial court's application of enhancement and mitigating factors within the statutory range. Prior to 2005, Tennessee Code Annotated section 40-35-401(b) read: "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; or (2) The enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." In 2005, the General Assembly deleted clause (2) of subsection 40-35-401(b), amending the subsection as follows: "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; (2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or (3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103." The State argues that, with this change, the General Assembly intended to abrogate the right of defendants to appeal the trial court's application and weighing of enhancement and mitigating factors.

This court previously has held that our current sentencing law does not permit defendants to appeal the weight afforded to enhancement factors by a trial court. State v. Terrance Patterson, No. W2005-01638-CCA-R3-CD, 2007 WL 2700160, at *10 (Tenn. Crim. App. Sept. 17, 2007) ("The fact that the General Assembly deleted the language regarding the weighing of enhancement and mitigating factors demonstrates that the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors.").

According to the State, "[t]he defendant may appeal on the ground that the sentence is excessive, but he cannot complain about the application of particular enhancement and mitigating factors or the weighing of those factors." Although the defendant's appellate brief does not explicitly claim that his sentence is excessive, it may reasonably be inferred that by challenging the trial court's finding of both enhancement factors, he is in fact arguing that his sentence is too long.

The defendant and the State agree that the trial court misapplied enhancement factor (3), that the offense involved more than one victim. "Tennessee courts have recognized that a person or

entity is a 'victim' under Tenn. Code Ann. § 40-35-114(3) when that person or entity 'is injured, killed, had property stolen, *or had property destroyed by the perpetrator of the crime*." State v. Lewis, 44 S.W.3d 501, 508 (Tenn. 2001) (emphasis in original) (citations omitted). It is inappropriate to apply the multiple victims enhancement factor where the indictment charges that the offense was committed against a specific, named victim. State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002). The indictment to which the defendant pled guilty names only Agent Rhodes as a victim. We agree with the defendant and the State that enhancement factor (3) was misapplied.

The State urges that we reinterpret the trial court's finding of enhancement factor (3) as a finding of enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. As we understand it, the State's argument is that the "court's rationale" for finding that Hines was a victim was that the defendant placed Hines's life at risk, which implies that the court intended to apply factor (10). A fair reading of the record, however, does not permit such a construction. We may consider only the record before us and may not speculate about any unspoken rationale of the trial court.

The defendant also alleges that the trial court erred in finding enhancement factor (2), that the defendant was a leader in the commission of an offense involving two or more criminal actors. The defendant argues that the State did not prove that Cole participated in the offense because no evidence was presented that he helped plan the robbery or was even aware that the defendant intended it. Cole did not supply the gun and was not present when the robbery took place. The State responds that application of this enhancement factor is appropriate because Cole told the defendant how to find the victim, drove him to the motel, and waited to drive him away from the scene.

The trial court discussed extensively its finding that enhancement factor (2) was applicable:

[N]ow, the proof in this case is pretty clear that the reason that this aggravated robbery took place began with a call that was placed by Mr. Eric Hines to a Mr. Travont Cole and the original purpose of all of this was to set up a drug buy using undercover officers, and Mr. Eric Hines as the confidential informant, and the original plan obviously was that Mr. Cole had indicated that he was willing to sell drugs to Mr. Eric Hines. I mean, it's pretty clear from the proof and from the statements that that was the original objective in this case. Now, it's also very evident from the facts and from what's been testified to that rather than Travont Cole showing up to perhaps be involved in a drug transaction that what took place was is that the defendant, Mr. Eric Charles, along with Mr. Travont Cole drove to this hotel and it does appear that the defendant Mr. Charles was driving his father's car. It does appear that once they arrived at the hotel that [the defendant] exited the driver's side of the vehicle. Obviously he's the one that drove there. When he exited the vehicle, obviously he had in his possession, I believe, it was a semiautomatic weapon, it was a handgun, which I've obviously seen photographs of at the earlier trial – the actual weapon as a matter of fact – and of course that was possessed by [the defendant]. Also, it's been very clear from the evidence that [the defendant] is the one who left

-5-

the vehicle then went up the stairway, went up to this room where this supposed drug transaction was going to take place and that he went there with the intent to commit aggravated robbery.

It's very clear even in [the defendant's] statement, he says, "On the 6th, 2006, I took a gun to the Motel 6" which I think is probably an incorrect name for the hotel, but he says, "I took a gun to the Motel 6 to rob Eric Hines. I knew he would have money." Now, you know, you have to ask yourself the question: How did he know Eric Hines was in that hotel room? Well, the only way that he could have known that Eric Hines was in the hotel room is for Mr. Travont Cole to have told [the defendant] that that's where he would be. So clearly the Court finds that there was some communication between Mr. Travont Cole and [the defendant] that in some way indicated to [the defendant] that Mr. Hines would be in this hotel room with money and obviously [the defendant] made a decision to commit aggravated robbery.

Now, you have to look at the proof too. Mr. Travont Cole went to the location with [the defendant]. Mr. Cole was the passenger of the car driven by [the defendant]. [The defendant] got out of the vehicle with this gun. After leaving the vehicle, Mr. Travont Cole drove the vehicle around to another location there in the parking lot and backed the car into the parking lot. Now, it's pretty evident, I mean, common sense will tell you Mr. Travont Cole was there waiting for [the defendant] to commit this crime of aggravated robbery. I mean, he was sitting there waiting for [the defendant] while [the defendant] went up to the room to commit what [the defendant] has already indicated was going to be an aggravated robbery. So, you have to decide who is really the leader in the commission of this offense.

The Court finds in this case that the defendant, Mr. Eric Charles, was a leader in the commission of this offense involving two or more criminal actors, and I do find that Mr. Travont Cole was a criminal actor. I mean, obviously he's the one that told [the defendant] about where Mr. Hines would be and the fact that Mr. Hines would have money. Mr. Cole went with [the defendant] to this location, drove out there with him. Mr. Cole waited on [the defendant] to go up and commit the aggravated robbery and was waiting to drive him away from the location. So, obviously under the circumstances, the Court finds that there were two criminal actors involved in this case, [the defendant] and Mr. Travont Cole.

We conclude that the proof was sufficient for the trial court to find that Cole was a criminal actor and that application of factor (2) was appropriate. Cole rode with the defendant to the motel where Agent Rhodes and the confidential informant were waiting to purchase drugs from him. After the defendant exited the vehicle, Cole drove the car to the other side of the parking lot and waited while the defendant robbed Agent Rhodes. Neither of the TBI agents who testified at the sentencing hearing had ever come into contact with the defendant prior to the robbery. From these facts, the trial court inferred that Cole must have told the defendant where Agent Rhodes was staying and that

he was susceptible to being robbed. The record supports this determination of the trial court. We conclude that the court properly applied the multiple criminal actor enhancement factor. If Cole was a criminal actor, then the defendant certainly was a leader in the commission of an offense involving multiple criminal actors. It is the defendant who procured the gun, went to the motel room, and took Agent Rhodes' property.

It is apparent from the record that the trial court considered all relevant facts, circumstances, and considerations as required by our sentencing law. Although the court misapplied factor (3), the offense involved more than one victim, it correctly applied factor (2), the multiple criminal actor factor. This court has held that application of a single factor may be sufficient to justify an enhanced sentence. State v. Shawn McCobb and Marcus Walker, No. W2006-01517-CCA-R3-CD, 2007 WL 2822921, at *4 (Tenn. Crim. App. Sept. 26, 2007). Accordingly, we affirm the sentence imposed by the trial court.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE