# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. EMORY LESLIE LETSON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 270750      Rebecca J. Stern, Judge**

---

**No. E2010-00055-CCA-R3-CD - Filed August 26, 2011**

---

In a three-count indictment returned by the Hamilton County Grand Jury, Defendant, Emory Leslie Letson, was charged in Count 1 with attempted first degree murder of Jason Kellogg, and in Counts 2 and 3, with reckless endangerment with a deadly weapon, with each count involving a different named victim.  Pursuant to a negotiated plea agreement, Count 1 was amended to a charge of aggravated assault to which Defendant pled guilty.  He also pled guilty to Count 2 as charged (which involved a minor as the victim), and Count 3 was dismissed.  Pursuant to the agreement, the length and manner of service of sentences for the convictions was determined by the trial court.  Defendant was sentenced to serve six years as a Range I standard offender for the aggravated assault conviction, and to serve two years as a Range I standard offender for the reckless endangerment conviction.  The sentences were ordered to be served concurrently with each other, and all forms of alternative sentencing were denied.  On appeal, Defendant argues that the sentences are excessive and that the trial court erred by denying full probation or some other form of alternative sentencing.  After a review of the record and the briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Jason D. Demastus, Chattanooga, Tennessee, for the appellant, Emory Leslie Letson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General, and William Hall, Assistant District Attorney General for the appellee, the State of Tennessee.

## OPINION

### I. Facts

The presentence investigation report completed by investigating officer James Rox was admitted as an exhibit during the testimony of Mr. Rox at the sentencing hearing. The report contained the following recitation from the affidavit of complaint by Chattanooga Police Officer Wilber McLean, filed in support of arrest warrants charging Defendant with attempted murder and two counts of reckless endangerment:

> On 10/25/08 AT APPROXIMATELY 0950 HRS. JASON KELLOG[G] REPORTED TO POLICE THAT HE OBSERVED TWO PARTIES STEALING ITEMS FROM HIS VEHICLE. MR. KELLOG[G] ATTEMPTED TO DETAIN ONE OF THE PARTIES AS THE SECOND PARTY RAN AWAY. MR. KELLOG[G] SAID THAT HE THEN OBSERVED SEVERAL PARTIES WALKING TOWARDS HIM; ONE ARMED WITH A SHOTGUN. THE PARTY ARMED WITH THE SHOTGUN FIRED ONE ROUND THAT HIT THE SIDE OF THE HOUSE NEAR THE BEDROOM WINDOW OF A SMALL CHILD. [N.J.] (7 YRS). MR. KELLOG[G] SAID THAT THE ARMED PARTY FIRED ANOTHER SHOT AT CLOSE RANGE WHICH PENETRATED THE HOUSE, GOING THROUGH THE BEDROOM JUST ABOVE THE BED WHERE [N.J.] WAS SLEEPING. MR. KELLOG[G] WAS THEN STRUCK IN THE HEAD WITH THE BUTT OF THE SHOTGUN SEVERAL TIMES CAUSING SEVERE SWELLING. MR. KELLOG[G] ALSO SUFFERED BUCKSHOT INJURIES TO HIS BACK, FROM THE SHOTGUN BLAST. MR. KELLOG[G] WAS THEN STRUCK SEVERAL TIMES IN THE HEAD AND FACE BY A WHITE FEMALE AND ANOTHER UNKNOWN MALE WHO WERE WITH THE ARMED SUSPECT. SEVERAL SPENT SHOTGUN SHELLS WERE FOUND AT THE SCENE. KREISTIE LEWIS, WHO WAS ALSO INSIDE THE HOUSE, WITNESSED THE INCIDENT. FURTHER INVESTIGATION LEAD [SIC] TO THE NAME OF EMORY LETSON [DEFENDANT] AS THE ARMED SUSPECT THAT FIRED THE SHOTS. KREISTIE LEWIS POSITIVELY IDENTIFIED EMORY LETSON FROM A PHOTO LINE-UP AS THE PERSON THAT FIRED THE SHOT GUN AT JASON KELLOG[G] AND STRUCK HIM IN THE HEAD WITH IT. MR. KELLOG[G] STATED THAT WHEN EMORY LETSON FIRED THE SHOTGUN, HE WAS POINTING THE WEAPON AT HIM. THIS INCIDENT OCCURRED IN THE CHATTANOOGA CITY LIMITS.

At the sentencing hearing, Mr. Kellogg testified that he was detaining the unidentified man who had been burglarizing Mr. Kellogg's vehicle when Defendant walked up the street brandishing a shotgun and demanding that Mr. Kellogg let the man go. Defendant shot the gun toward the house at least three times. Mr. Kellogg was holding the unidentified individual on the porch. Mr. Kellogg let the man go immediately after the first shot and Defendant proceeded to turn up on the porch. Mr. Kellogg grabbed the unidentified individual again and used him as a shield while trying to back his way into his home.

Defendant hit Mr. Kellogg in the head with the butt of the shotgun multiple times. The gun discharged again and pellets from the blast ricocheted off the house and struck Mr. Kellogg in the head and in his back.

Christy Lewis, Mr. Kellogg's fiancée, testified she was present in the house at the time of the incident. She added that the medical bills of Mr. Kellogg not paid by insurance amounted to $360.00. She also confirmed the information provided by Mr. Kellogg in his testimony.

Diane Collins, Defendant's grandmother, was called to testify on behalf of Defendant. She stated that when Defendant was thirteen years old, both of his parents were incarcerated in a federal prison for manufacturing methamphetamine. Defendant moved in with Ms. Collins at that time. He later was found to be delinquent by the juvenile court, and was placed in state custody at Taft Youth Center, Mountain View Youth Development Center, and a group home. Upon release, he returned to live with Ms. Collins and worked for a pressure washing business.

Timothy Anderson testified that he employed Defendant at Mr. Anderson's pressure washing business for approximately one and one-half to two years until Defendant's arrest. Mr. Anderson stated that Defendant was a good worker. He further testified that he was willing to re-hire Defendant upon his release from custody if Defendant was granted probation.

Defendant testified that on the day of the incident leading to his convictions, a friend came "running in [my] house" and told Defendant that another friend was getting "ganged around the street." Admitting that he "acted before [he] thought," Defendant described how he grabbed a shotgun and went to the house with the intent to scare the people. It is noteworthy what Defendant testified he realized upon reaching the house:

> I got around there and what he [friend at the house] told me was wrong. He [the other friend] wasn't getting ganged. It was just a lady and her husband or her boyfriend.

Even though Defendant realized his friend at Mr. Kellogg's house was not getting "ganged," he did see his friend getting hit and also saw someone holding a baseball bat. Defendant yelled at the man and woman and told them to "let him go." Defendant's friend was yelling "help, help me, help me."

Defendant admitted he fired his shotgun once "in the air." He then ran upon the porch and started hitting Mr. Kellogg with the shotgun. Defendant testified that he unintentionally fired the shotgun while he was hitting Mr. Kellogg with the butt of the weapon. In hindsight, Defendant summed up his feelings on the incident as follows:

> I wish I had let my buddy go on to jail and him get what he deserves for [sic]. But I ain't - - I was just acting on instinct really, you know what I'm saying. I wasn't even thinking. I was just - - I was just trying to help my friend, you know what I'm saying.

The presentence investigation report shows that Defendant had prior convictions for disorderly conduct and underage possession of alcohol as an adult.

As a juvenile, he was found to be delinquent on eight separate vehicle burglary charges, five separate misdemeanor theft charges, and two felony theft charges, including the theft of a motor vehicle over $10,000.00 in value. He also had adjudications of probation violations in September 2004 and June 2005. He was in state custody from June 2005 until August 2006. Defendant was 21 years old at the time of commission of the offenses in this case on October 25, 2008.

## II. Trial Court's Ruling

Just prior to imposing the sentences, the following colloquy occurred between the trial court and the prosecutor:

> THE COURT: How was the aggravated [assault] charged? Was it serious bodily injury or was it with a weapon?
>
> [PROSECUTOR]: Well, it was attempted first degree murder and part of the plea was we'd break it down to an aggravated assault. He was injured and used a weapon. [sic]

The judgment regarding the aggravated assault conviction does not specify the specific code subsection pertaining to the type of aggravated assault. The above colloquy is the only indication in the record of the type of aggravated assault, except the judgment does

state that Defendant pled guilty to a Class C felony. The only type of Class C felony aggravated assault which is applicable to the facts in this case is Tennessee Code Annotated section 39-13-102(a)(1)(A) and (B), which states as follows:

> (a) A person commits aggravated assault who:
>   (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
>     (A) Causes serious bodily injury to another; or
>     (B) Uses or displays a deadly weapon;

When specifically asked by the court to explain the elements of the type of aggravated assault to which the Defendant pled guilty under the plea agreement, the prosecutor stated that the victim "was injured," *see* Tenn. Code Ann. § 39-13-101(a)(1) (assault necessary as an element of aggravated assault, Tenn. Code Ann. § 39-13-102(a)(1)) and did *not* say the victim suffered "serious bodily injury." However, the prosecutor further indicated the type of aggravated assault by stating that Defendant "used a weapon." Therefore, the record shows that Defendant pled guilty to aggravated assault as defined by Tennessee Code Annotated section 39-13-102(a)(1)(B), that is, intentionally or knowingly committing an assault as defined in Tennessee Code Annotated section 39-13-101 by the use or display of a deadly weapon.

The trial court applied the following enhancement factors from Tennessee Code Annotated section 40-35-114:

> As to aggravated assault,
>
> No. (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
>
> No. (9) The defendant possessed or employed a firearm, explosive devise or other deadly weapon during the commission of the offense;
>
> No. (10) The defendant had no hesitation about committing a crime when the risk to human life was high;
>
> No. (16) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.

As to the conviction for felony reckless endangerment, the trial court applied from Tennessee Code Annotated section 40-35-114, factors No. (1), (10), and (16) and also No. (4), a victim was particularly vulnerable because of age or physical or mental disability.

The trial court applied the following as mitigating factors: Defendant has a history of mental illness, being bipolar with ADHD, and his family situation was bad since both of his parents were confined in federal prison when Defendant was in his early teenage years.

The trial court sentenced Defendant to six years as a standard Range I offender for the aggravated assault conviction, two years as a standard Range I offender for the felony reckless endangerment conviction, ordered the sentences to be served concurrently with each other, and ordered that the sentences be served in incarceration.

## III. Analysis

### *Length of Sentences*

Defendant argues that the trial court imposed excessive sentences by ordering the maximum sentence in each case when the court erroneously: (a) found that enhancement factor number (10) was applicable, and (2) declined to apply as mitigating factors that (i) he acted under duress and that (ii) there were substantial grounds tending to excuse his behavior.

Defendant also argues that the trial court erred by denying him a sentence to be served on probation or some other form of alternative sentence.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.

In conducting a *de novo* review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343*; State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] § 40-35-103(5).

*Id*. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. *Id*. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id*. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id*. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. *Id*. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and

enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. *Carter*, 254 S.W.3d at 345.

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. *See* Tenn. Code Ann. § 40-35-303(b); *see also Carter*, 254 S.W.3d at 348. No criminal defendant is automatically entitled to probation as a matter of law. *See* Tenn. Code Ann. § 40-35-303(b), Sentencing Comm'n Comments; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. *See Carter*, 254 S.W.3d at 347; *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. *See id*. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. *See* Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We note, however, that "the determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption of evidence to the contrary. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). Conversely, the defendant has the burden of establishing his or her suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *Id.; see Boggs*, 932 S.W.2d at 477.

In its brief, the State correctly acknowledges that the trial court erred by applying statutory enhancement factor (10), that "[t]he defendant had no hesitation about committing

a crime when the risk to human life was high." As noted by the State, this court has held that the risk to human life is inherent in the offenses of aggravated assault and reckless endangerment, *State v. Allen Ray Kennedy*, No. M2006-00847-CCA-R3-CD, 2007 WL 879566, at *4 (Tenn. Crim. App. March 23, 2007), *no perm. app. filed*, and "[g]enerally, if an enhancement factor is an essential element of the offense, the factor may not be used to enhance the sentence," *Id*. (citing Tenn. Code Ann. 40-35-114).

Although the State further asserts that Defendant's conviction for aggravated assault was based upon the victim's suffering bodily injury [sic] (as applicable, the assault must cause *serious* bodily injury – *see* Tenn. Code Ann. § 39-13-102(a)(1)(A)), we have concluded above that based upon the prosecutor's representations to the trial court, Defendant's aggravated assault conviction was based upon use of a deadly weapon. Accordingly, the trial court erred by applying enhancement factor no. (9) to the sentence for aggravated assault.

Defendant does not challenge the applicability of the remaining enhancement factors. There is an absence of proof in the record to support the trial court's conclusion that enhancement factor no. (4) should apply to the conviction for reckless endangerment. The trial court concluded that the victim was a child and therefore vulnerable. However, the State did not offer any proof of how the seven year old child was particularly vulnerable due to his age, any more than Ms. Lewis, Mr. Kellogg's fiancée, was vulnerable due to being inside the house when pellets from a shotgun blasted through a window. *See State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001), wherein our Supreme Court stated:

> A victim's youth does not necessarily equate with vulnerability, however. [citations omitted] The State is required to proffer evidence in addition to the victim's age to establish particular vulnerability; however, that evidence "need not be extensive." *[State v.] Poole*, 945 S.W.2d [93,] 97 [(Tenn. 1997)]. Also a court may consider the natural vulnerabilities attendant to the extreme ends of the aging spectrum by giving "additional weight . . . to the age of the victim in those cases where a victim is extremely young or old." *Id*.

*Lewis*, 44 S.W.3d at 505.

Regarding Defendant's assertions that his sentence should have been mitigated because he acted under duress and substantial grounds existed tending to excuse his behavior, we conclude that the trial court did not err by declining to apply these factors in mitigation. The record fails to prove the existence of either mitigating factor.

Since the trial court erroneously applied three enhancement factors, our review of the length of the sentences is *de novo* with no presumption of correctness. We conclude that the enhancement factors which are applicable, even when considered in the light of the mitigating factors found by the trial court, justify the total effective sentence of six years.

*Manner of Service of Sentences*

Defendant argues that he should have been granted full probation or some other form of alternative sentencing. He concedes that he had previously violated probation while in the Juvenile Court system, but asserts that he was subsequently able to care for himself and maintain employment for approximately two years before he committed the offenses in the case *sub judice*. Without being very specific, Defendant basically argues that the trial court did not properly weigh the evidence in denying probation or "alternative sentencing." Defendant had fifteen delinquency adjudications of vehicle burglary and theft, including theft of a vehicle, and at least two probation violations in juvenile court. After release from juvenile court custody when he was almost 19 years told, Defendant had two misdemeanor convictions (one for an offense in December 2007, and the other for an offense in January 2008) before committing the two felony offenses that are the subject of this appeal. The delinquent juvenile conduct began in 2004 and his prior criminal conduct extended to January 2008 before the instant offenses occurred in October 2008.

The trial court ordered Defendant's effective sentence of six years to be served in incarceration because it found all three criteria of Tennessee Code Annotated section 40-35-103(1)(A), (B), and (C) had been met. This code subsection states:

(1)  Sentences involving confinement should be based on the following considerations:

(A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to other likely to commit similar offenses; or

(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

-10-

Although Defendant's prior conduct as a juvenile resulted in adjudications of delinquency rather than convictions, it still consisted of serious criminal conduct. He was granted probation or adjudicated "delinquent, no contact with victim" or placed on juvenile probation with suspended committal fourteen times before finally being ordered into state custody for violation of probation. These two facts support the considerations in Tennessee Code Annotated section 40-35-103(1)(A) and (C) sufficiently to justify denial of probation or any other alternative sentence in this case. Defendant proceeded from committing serious criminal acts of delinquency as a juvenile, to less serious criminal acts as an adult before committing the violent felonies in this case with the use of a firearm. This supports the consideration in subsection (1)(B) of Tennessee Code Annotated section 40-35-103. Service of the effective sentence of six years in incarceration is clearly justified in this case. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE